Eric M. Poulin (*pro hac vice admission pending*)
Roy T. Willey, IV (*pro hac vice admission pending*)
Anastopoulo Law Firm, LLC
32 Ann Street
Charleston, SC 29403
(843) 614-8888

John C. Bohren
CA State Bar No. 295292
Bohren Law
501 W. Broadway Suite 800
San Diego CA 92101
(619) 433-2803

**ATTORNEYS FOR PLAINTIFF(S)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| NOAH RITTER, individually and on behalf of others similarly situated, | Civil Action No._____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **CLASS ACTION** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff Noah Ritter ("Plaintiff") by and through undersigned counsel, brings this action against The Regents of the University of California ("Defendant" or the "University") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

### PRELIMINARY STATEMENT

1.   Plaintiff brings this case as a result of Defendant's decision to close campuses, constructively

evict students, and transition all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2.  While closing campuses and transitioning to online classes was the right thing for Defendant to do, this decision deprived Plaintiff and the other members of the Class from recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.  Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Class for their loss.

4.  This action seeks refunds of the amount Plaintiff and other members of the Class are owed on a pro-rata basis, together with other damages as pled herein.

## PARTIES

5.  The University of California is the multi-campus public university system for the state of California, consisting of ten (10) constituent institutions throughout the state.

6.  The University of California is governed by the Board of Regents, as established in Article IX, section 9 of the California State Constitution.

7.  The Regents of the University of California office is located in Oakland, California.

8.  The Regents of the University of California has full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services.

9.  The Regents of the University of California is vested with the legal title and the management and disposition of the property of the university and of property held for its benefit and shall have the power to take and hold, either by purchase or by donation, or gift, testamentary or otherwise, or in any other manner, without restriction, all real and personal property for the benefit of the university or incidentally to its conduct; provided, however, that sales of university real property shall be subject to such competitive bidding procedures as may be provided by statute. Said corporation also has all the powers necessary or convenient for the effective administration of its trust, including the power to sue and to be sued, to use a seal, and to delegate to its committees or to the faculty of the university, or to others, such authority or functions as it may deem wise.

10. Upon information and belief, Defendant had an estimated endowment of approximately $8.9 billion in 2018[1].

11. Moreover, upon information and belief, Defendant is eligible to receive federal stimulus under the CARES Act.  The Act directs that approximately 14 billion dollars be distributed to colleges and universities based upon enrollment and requires that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

12. The University of California Berkeley (hereinafter "Berkeley") stated the CARES Act promised "to bring $30 million to the Berkeley campus" and also speculated that other federal stimulus packages may provide additional funding for such things as infrastructure projects.[2]  Moreover, Berkeley stated it was "actively investigating" whether it was eligible for funding from the Federal Emergency Management Agency (FEMA) as part of the

---

[1] https://www.universityofcalifornia.edu/press-room/university-california-investment-assets-under-management-show-strong-gains-0
[2] https://news.berkeley.edu/2020/04/17/an-update-on-uc-berkeleys-budget-situation/

Class Action Complaint

response to the COVID-19 crisis.[3]

13. Upon information and belief, The Regents of the University of California anticipated and prepared for the financial impacts of COVID-19, as evidence of such, in a statement issued on April 1, 2020, Berkeley stated that The Regents have set aside "what was an advanced plan for a cohort tuition increase."[4]

14. Plaintiff is an individual and a resident and citizen of the state of California.

15. Plaintiff is currently enrolled as a full-time student in Defendant's undergraduate program, studying political science at the University of California Berkeley Campus.

16. Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, or otherwise.

17. There are hundreds, if not thousands, of institutions of higher learning in this country.

18. Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

19. Defendant's institution offers in person, hands on curriculum.

20. Plaintiff and members of the Proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and enroll on an in-person basis.

21. Common sense would dictate that the level and quality of instruction an educator can provide through an online format is lower than the level and quality of instruction that can be provided in person.

22. Moreover, the true college experience encompasses much more than just the credit hours and

---

[3] Id.
[4] https://news.berkeley.edu/2020/04/01/coronavirus-response-financial-impacts-of-covid-19/

degrees.  The college experience consists of:

    a)  Face to face interaction with professors, mentors, and peers;

    b)  Access to facilities such as computer labs, study rooms, laboratories, libraries, etc;

    c)  Student governance and student unions;

    d)  Extra-curricular activities, groups, intramurals, etc;

    e)  Student art, cultures, and other activities;

    f)  Social development and independence;

    g)  Hands on learning and experimentation; and

    h)  Networking and mentorship opportunities.

23. Indeed, Defendant advertises the cost of tuition as covering not just credit hours and instructional costs, but also "libraries and other academic support, student services, institutional support, and operation and maintenance of the plant."[5]

24. Plaintiff's education has transitioned from in-person hands on learning to online instruction.

25. Plaintiff's online instruction is not commensurate with the same classes being taught in person.

26. For example, upon information and belief, not every course is even being taught live online. Some professors are uploading pre-recorded lectures where students do not have a chance to interact, and some professors are simply uploading assignments with no video instruction at all.

27. In addition to tuition, Defendant charges students across the system certain mandatory fees.

28. Plaintiff was required to pay mandatory fees to attend in person classes at UC Berkeley, including but not limited to:

    a.   Student Services Fee

---

[5] https://www.ucop.edu/operating-budget/fees-and-enrollments/descriptions-of-charges.html

1

2

3

4

    b.   Campus Fee

    c.   Transit Fee

    d.   Health Services Fee

29. The student services fee is intended to cover "services that are necessary to students but not part of the University's programs of instruction" such as cultural and social activities.[6]  This fee is charged across Defendant's system.

30. Specifically, UC Berkeley uses this fee to cover such costs and offer such services and programs as "social, recreational, and cultural activities" and "services related to campus life and campus community."[7]

31. The campus fee is also charged across Defendant's system, but varies in amount and allocation from campus to campus.  At the UC Berkeley Campus, the Campus Fee is intended to cover such things (among others) as:[8]

    a)   Access to the Student Center

    b)   Access to Campus Health Care

    c)   Student Technology

    d)   Access to the Wellness Facilities

32. The Transit Fee is a mandatory fee for all students at the Berkeley Campus that provides for an AC Transit Class Pass, giving students access to unlimited rides on AC Transit buses and Bear Transit shuttles.[9]

33. As a result of being moved off campus, Plaintiff and members of the proposed Fees Class no longer have the benefit of the services for which these fees have been paid.  For example, the student centers, computer labs, wellness centers, and health centers are closed for in person

---

[6] Id.
[7] https://registrar.berkeley.edu/tuition-fees-residency/tuition-fees
[8] Id.
[9] Id.

use; and students having vacated campus and returned home at Defendant's insistence no longer have access to or the need for transportation on AC Transit buses and Bear Transit shuttles.

34. At Defendant's request and direction, Plaintiff moved out of on-campus housing on or about April 1, 2020 and has not lived on campus since, nor had access to any of the facilities or services described herein since that date.

## JURISDICTION AND VENUE

35. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

36. This Court has personal jurisdiction over Defendant because Defendant is domiciled in California and conducts business in California.

37. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is a corporate body domiciled and doing business in this District.

## FACTUAL ALLEGATIONS

38. Plaintiff is a student at Berkeley, where he paid tuition and fees for the Spring 2020 Semester.

39. Upon information and belief, Berkeley's Spring term began with the first day of classes on or about January 14, 2020.[10]

40. Upon information and belief, Berkeley's Spring term was scheduled to conclude with the

---

[10] https://registrar.berkeley.edu/sites/default/files/pdf/UCB_AcademicCalendar_2019-20_V5.pdf

Class Action Complaint

last day of classes on May 1, 2020, and final examinations on May 11th through May 15, 2020.[11]

41. Berkeley's Spring Recess began on or about March 23, 2020 and ended on or about March 27, 2020.

42. Accordingly, Berkeley's Spring semester was scheduled and contracted to consist of approximately 122 days.

43. On March 9, 2020, Chancellor Carol Christ announced that beginning March 10, 2020, Berkeley was suspending "most in-person classes" and instead offering "ALL lecture courses (including discussion sections), seminar instruction and examination through alternative modalities." Moreover, Chancellor Christ stated that instructor who did not have remote learning processes in place by March 10th would be given a two-day period (March 10th and 11th) during which they could cancel classes. As directed by Chancellor Christ, even courses requiring instruction inside the classroom were encouraged to minimize in-person meetings. Lastly Chancellor Christ stated all campus-sponsored events with plans for more than 150 attendees would be cancelled or postponed, and planners of those campus-sponsored events with fewer than 150 attendees were "strongly encourage[d] to explore alternatives to in-person gatherings."[12]

44. On March 11, 2020, Berkeley announced that campus spaces and venues would not be available for any event with 100 or more expected attendees, intercollegiate athletics would be held without spectators, all Cal Performances events were cancelled through March 29th, and Cal Day (scheduled for April 18, 2020) was cancelled.[13]

45. On March 13, 2020, Chancellor Christ and Executive Vice Chancellor and Provost, Paul

---

[11] Id.
[12] https://news.berkeley.edu/2020/03/09/as-coronavirus-spreads-uc-berkeley-suspends-in-person-instruction/
[13] https://news.berkeley.edu/coronavirus/#updates

Alivisatos, issued a joint statement extending remote instruction through the end of the semester.[14]

46. On March 16th, Berkeley announced that all in-person instruction was canceled for the remainder of the semester, and that all libraries, the Martin Luther King Jr. Student Union, Eshleman hall, Cesar Chavez Hall, and the Recreational Sports Facility would be closed.[15]

47. On March 20, 2020, Berkeley announced that the default grading policy for all undergraduate courses would be a Passed/ Not Passed grade, with letter grades available only upon request.[16]

48. While Berkeley maintains the primary intention of this policy was to reduce students' stress, Berkeley also acknowledges that one of its intentions in adopting the Pass/ Not Pass grading policy was to "reflect the fact that instructors have in many cases been forced to drastically alter their course plans."[17]

49. The policy change sparked numerous student concerns, including the impact it would have on admission to graduate and professional schools.[18]

50. Berkeley acknowledged that imposing a Pass/ Not Pass policy, without giving the students the option of a letter grade "was found to constitute a potential violation of the campus's contractual obligations to students"[19] and instead adopted a default Passed/ Not Passed policy, which it deemed to be a "least bad" solution.[20]

---

[14] https://news.berkeley.edu/2020/03/13/uc-berkeley-extends-remote-instruction-through-end-of-semester/
[15] https://news.berkeley.edu/2020/03/16/uc-berkeley-takes-additional-actions-to-encourage-social-distancing/
[16] https://academic-senate.berkeley.edu/issues/coronavirus/student-qa-grading-spring-semester-2020
[17] https://academic-senate.berkeley.edu/issues/coronavirus/instructor-qa-grading-spring-semester-2020
[18] Id.
[19] https://academic-senate.berkeley.edu/issues/coronavirus/instructor-qa-grading-spring-semester-2020
[20] Id.

51. On March 27, 2020, Berkeley's Council of Deans released the following statement in regard to students' concerns about how Pass/ Not Pass grades may affect their applications to graduate and professional schools[21]:

> Recognizing the challenges to teaching and learning during the COVID-19 pandemic, the Provost and Deans of the University of California, Berkeley adopted the following principle:
>
> UC Berkeley evaluates applicants for admission to its graduate and professional schools holistically, meaning that we consider an applicant's combination of personal accomplishments, letters of recommendation, personal statements, academic record, and test scores in making our admissions decisions. Such a review will take into account the significant disruptions of COVID-19 when reviewing students' transcripts and other admissions materials from Spring 2020. We understand that many institutions across the country instituted P/NP grading policies during that semester. Thus, we will not penalize students for the adoption of P/NP and other grading options during this unprecedented period, whether the choices were made by institutions or by individual students. Our admissions evaluation will focus primarily on a student's academic performance prior to this period, and if applicable, following this period. What is most important is that applicants demonstrate that they pursued a challenging curriculum that was relevant to their plan for graduate or professional school.

52.  On April 22, 2020, Berkeley announced that the deadline to drop or withdraw from most Summer Session courses and still receive a refund of various fees would be extended, in order to allow students two weeks to try the all-remote instruction format.[22]

53. As of the drafting of this Complaint, Defendant has not announced that it will be offering any refunds of tuition and/ or fees.

54. Although Defendant is still offering some level of academic instruction via online classes, Plaintiffs and members of the proposed Class have been and will be deprived of the benefits of on campus learning as set forth more fully above.

55. Moreover, the value of any degree issued on the basis of online or pass/fail classes will be

---

[21] https://news.berkeley.edu/coronavirus/#updates
[22] https://ssall.zendesk.com/hc/en-us/articles/360044567993-COVID-19-Information-for-Berkeley-Summer-Sessions

Class Action Complaint

diminished for the rest of their lives.

56. Likewise, Plaintiffs and members of the proposed Class have been and will be deprived of utilizing services for which they have already paid, such as access to campus facilities, and other opportunities.

## CLASS ACTION ALLEGATION

57. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of students enrolled in classes at the University of California for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.
>
> **The Fees Class:**
>
> All people who paid fees for or on behalf of students enrolled in classes at the University of California for the Spring 2020 semester.

58. Excluded from the Classes are The Board of Regents of the University of California and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

61. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiff is informed and believes there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

62. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a)  Whether Defendant engaged in the conduct alleged herein;

    b)  Whether there is a difference in value between online distance learning and live in-person instruction;

    c)  Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;

    d)  Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;

    e)  Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services the fees were intended to cover;

    f)  Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services the fees were intended to

cover;

g) Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

h) Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

i) The amount and nature of relief to be awarded to Plaintiff and the other Class members.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

63. Plaintiff's claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

64. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of other members of the Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation; and Plaintiff intends to prosecute the action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

65. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful

conduct.

66. Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

67. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

68. The University has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION
BREACH OF CONTRACT
(Plaintiff and Other Members of the Tuition Class)**

69. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

70. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

71. Plaintiff and the Tuition Class entered into contracts with the University which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, the University would provide live in-person instruction in a physical classroom.

72. Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester either out-of-pocket or by using student loan

financing, or otherwise.

73. The University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, without reducing or refunding tuition accordingly.

74. The University retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

75. Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the services the tuition was intended to cover, namely live in-person instruction in a physical classroom.

76. As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the difference between the value of the online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

77. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

78. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

79. The University has received a benefit at the expense of Plaintiff and other members of the Tuition Class to which it is not entitled.

80. Plaintiff and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms and did not receive the full benefit of the bargain.

81. Plaintiff and other members of the Tuition Class conferred this benefit on Defendant when

they paid the tuition.

82. Defendant has realized this benefit by accepting such payment.

83. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

84. Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

85. Defendant should be required to disgorge this unjust enrichment.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

86. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

87. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

88. Plaintiff and the Fees Class entered into contracts with the University which provided that Plaintiff and other members of the Fees Class would pay certain fees for or on behalf of students and, in exchange, the University would provide services related to those fees, such as access to student activities, athletics, wellness centers, libraries, etc.

89. Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

90. The University breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, and closing most campus buildings and facilities.

91. The University retained fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain.

92. Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

93. As a direct and proximate result of Defendant's breach, Plaintiff and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which services were not provided.

<strong>FOR A FOURTH COLLECTIVE CAUSE OF ACTION<br>UNJUST ENRICHMENT<br>(Plaintiff and Other Members of the Fees Class)</strong>

94. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

95. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

96. The University has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

97. Plaintiff and other members of the Fees Class paid substantial student fees for on campus benefits and services and did not receive the full benefit of the bargain.

98. Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

99. Defendant has realized this benefit by accepting such payment.

100.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the fees were collected, making Defendant's retention unjust under the circumstances.

101.    Equity and good conscience require that the University return a pro-rata portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

102.    Defendant should be required to disgorge this unjust enrichment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

a.      Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

b.      Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

c.      Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

d.      Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

e.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

f.      Scheduling a trial by jury in this action;

g.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

h.       Awarding pre and post judgment interest on any amounts awarded, as permitted by law; and

i.      Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

**BOHREN LAW**

_____
John C. Bohren
CA State Bar No. 295292
Bohren Law
501 W. Broadway Suite 800
San Diego CA 92101
(619) 433-2803
yanni@bohrenlaw.com

**ANASTOPOULO LAW FIRM, LLC**

Eric M. Poulin (*pro hac vice admission pending*)
Roy T. Willey, IV (*pro hac vice admission pending*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF(S)**

San Diego CA 92101

April 28, 2020