C. Moze Cowper (CA Bar No. 326614)
Noel E. Garcia. (CA Bar No. 326831)
**COWPER LAW PC**
10880 Wilshire Boulevard, Suite 1840
Los Angeles, California  90024
Tel.:  877-529-3707

Matthew S. Miller*
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois  60601
Tel.:  312-741-1085

Adam J. Levitt*
Laura E. Reasons*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900

*\* Admitted Pro Hac Vice*

*Counsel for Plaintiff Brandmeyer and the Proposed "Fee Track" Class*

Eric M. Poulin (CA Bar No. 298476)
Roy T. Willey, IV*
**ANASTOPOULO LAW FIRM, LLC**
32 Ann Street
Charleston, South Carolina  29403
Tel.:  877-614-8888

*\* Admitted Pro Hac Vice*

*Counsel for Plaintiff Ritter and the Proposed "Tuition Track" Class*

(Additional counsel listed on signature page.)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CLAIRE BRANDMEYER, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and JANET NAPOLITANO, individually and in her capacity as President of THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>　　　　　　Defendants. | Case No. 3:20-CV-02886-SK<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Hon. Mag. Sallie Kim<br><br>Date:　　　　TBD<br>Time:　　　　TBD<br>Courtroom:　C, 15th Floor |

NOAH RITTER, individually and on behalf of others similarly situated,

                Plaintiff,

    v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and JANET NAPOLITANO, individually and in her capacity as President of THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

                Defendants.

Case No. 3:20-CV-02925-SK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iv

STATEMENT OF THE ISSUES TO BE DECIDED ...............................................vii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND .........................................................................................2

PROCEDURAL HISTORY ..........................................................................................4

ARGUMENT .....................................................................................................................4

**I. The Eleventh Amendment Does Not Bar This Court From Hearing This Matter and Ordering the Return of Plaintiffs' and the Other Class Members' Property** .................................................................................................................................5

    **A.  Plaintiffs Seek Return of their Own Property--not the State's Property--so the Eleventh Amendment is Not a Bar to Any of Their Claims** ......................................................................................................................6

    **B.  Plaintiffs May Sue Defendant Napolitano in Her Official Capacity for Prospective Injunctive Relief Under *Ex Parte Young*** .........................8

    **C.  Plaintiffs' Individual Capacity Claims Against Defendant Napolitano Are Not Subject to Immunity** ........................................................................11

**II. Plaintiffs Have Stated Cognizable Claims For Relief that Survive Under the Rule 12(b)(6) Standard** .........................................................................................13

    **A.  Plaintiffs State a Claim Under 42 U.S.C. § 1983 Against Napolitano in Her Official and Individual Capacities** ..................................................13

        **1.  *Plaintiffs and the Other Class Members Have a Property Interest in their Fee and Tuition Monies*** ................................................................14

            a.  *Plaintiffs Seek Return of Their Own Property* ....................................14

            b.  *State Law Creates an Implied Promise that Plaintiffs' Consideration Would be Restored to Them* .................................................17

            c.  *Plaintiffs Have Constitutionally-Protected Property Rights Created by Contract* ...............................................................................................19

        **2.  *Defendant Napolitano Took Plaintiffs' and the Other Class Members Property Without Due Process*** ..........................................................2

            a.  *Defendant Napolitano Took Plaintiffs' Property* ...............................20

            b.  *Plaintiffs Were Not Afforded Due Process* ........................................22

    **B.  Plaintiffs' Common Law Claims are Also Adequately Pleaded** .............24

CONCLUSION ...............................................................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. Aguirre*, 2006 U.S. Dist. LEXIS 90384 (S.D. Cal. Dec. 13, 2006) .................................. 20

*Atchison, T. & S.F.R. Co. v. O'Connor*, 223 U. S. 280 (1912)........................................................ 30

*Barron ex rel. Tiernan v. Mayor of Baltimore*, 7 Peters 243 (1833)................................................ 31

*Bell v. Burson*, 402 U.S. 535, 542 (1971)........................................................................................ 29

*Benn v. Cty. of L.A.*, 150 Cal. App. 4th 478 (2007)......................................................................... 20

*Board of Regents v. Roth*, 408 U.S. 564 (1972) .............................................................. 20, 26, 29

*Bowers v. Whitman*, 664 F.3d 1321 (9th Cir. 2012) ........................................................................ 20

*Bradshaw v. Rodgers*, 20 Johns. 103 (N.Y. 1822) .......................................................................... 31

*Brown v. Legal Found.*, 538 U.S. 216 (2003) .................................................................................. 20

*Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468 (9th Cir. 2017).................................................. 31

*Carteret Sav. Bank, FA v. Office of Thrift Supervision*, 762 F. Supp. 1159 (D.N.J. 1991).............. 26

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999) ....................... 16, 31

*City of Oakland v. Oakland Raiders*, 32 Cal.3d 60 (1982) ............................................................. 26

*Cotta v. City & Cty. of S.F.*, 157 Cal. App. 4th 1550, 1567-68 (2007)............................................ 26

*County of Los Angeles v. Southern Cal. Tel. Co.*, 32 Cal.2d 378 (1948) ........................................ 26

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................................................ 12

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983)........................ 32

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007) ....................................................... 20

*Far W. Fed. Bank, S.B. v. Dir., Office of Thrift Supervision*, 746 F. Supp. 1042 (D. Or. 1990) ..... 25

*Hafer v. Melo*, 502 U.S. 21 (1991) .................................................................................................. 17

*Haigler v. Donnelly*, 18 Cal.2d 674 (1941) .................................................................................... 32

*Hartford Cas. Ins. Co. v. J.R. Mktg.*, 61 Cal. 4th 988, 1000 (2015)................................................ 31

*Hausken v. Lewis*, No. C12-5882 BHS-JRC, 2013 U.S. Dist. LEXIS 130816 (W.D. Wash. Sep. 12, 2013)..................................................................................................................................... 28

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, 2020 U.S. Dist. LEXIS 80736 (S.D. Cal. May 7, 2020) ........................................................ 31

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ........................................................ 29

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) ............................ 19

*Lucero v. Hart*, 915 F.2d 1367 (9th Cir. 1990) ................................................................ 20

*Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) ............................................... 28

*Lynch v. United States*, 292 U.S. 571 (1934) .................................................................. 25

*Massachusetts v. United States*, 435 U.S. 444 (1978) ...................................................... 26

*McGuire v. Ameritech Servs.*, 253 F. Supp. 2d 988 (S.D. Ohio 2003)................................. 21

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990).............. 12, 15, 30

*Paulsen v. Golden Gate University*, 25 Cal.3d 803 (1979) ................................................ 23

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384 (2007) ....................................................................................................................... 32

*Perry v. Sindermann*, 408 U.S. 593 (1972) ..................................................................... 25

*Pumpelly v. Green Bay Co.*, 80 U.S. 166 (1872)............................................................... 31

*Reich v. Collins*, 513 U.S. 106 (1994)............................................................................. 12

*Richards v. Washington Terminal Co.*, 233 U.S. 546 (1914)............................................. 31

*Richter v. Union Land & Stock Co.*, 129 Cal. 367 (1900).................................................. 24

*Ross v. City of Berkeley*, 655 F. Supp. 820 (N.D. Cal. 1987)............................................ 32

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ........................................................ 26

*S. Cal. Gas Co. v. Los Angeles*, 50 Cal. 2d 713 (1958) .................................................... 26

*Strickland v. Turner*, 7 Exch. 208 (1852) ....................................................................... 25

*Sueoka v. United States*, 101 F. App'x 649 (9th Cir. 2004) ......................................... 26, 27

*Sutter Butte Canal Co. v. R.R. Com. of Cal.*, 202 Cal. 179 (1927) .................................... 26

*Tahoe-Sierra Preservation Counsel. Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002) .............................................................................................................................. 19

*Townsend v. Crowdy*, 8 C.B.N.S. 477 (1860) .................................................................. 25

*Tristani v. Richman*, 609 F. Supp. 2d 423 (W.D. Pa. 2009)................................................................ 27

*United States v. Barlow*, 132 U.S. 271 (1889) ................................................................ 25

*United States v. Causby*, 328 U.S. 256 (1946) ................................................................ 19

*United States v. Central Pacific R. Co.*, 118 U. S. 235 (1886) ................................................................ 25

*United States v. Lee*, 106 U.S. 196 (1882) ................................................................ 13

*United States v. Northern Pacific Ry. Co.*, 256 U. S. 51 (1921) ................................................................ 25

*United States v. Pewee Coal Co.*, 341 U.S. 114 (1951) ................................................................ 19

*United States v. Skinner & Eddy Corp.*, 28 F.2d 373 (W.D. Wash. 1928) ................................................................ 25

*United States v. Sperry Corp.*, 493 U.S. 52 (1989) ................................................................ 26

*Vail v. Bd. of Educ.*, 706 F.2d 1435 (7th Cir. 1983)................................................................ 25

*Vance v. Barrett*, 345 F.3d 1083(9th Cir. 2003) ................................................................ 27

*Voris v. Lampert*, 7 Cal. 5th 1141 (2019)................................................................ 32

*Washington v. Udall*, 417 F.2d 1310 (9th Cir. 1969) ................................................................ 14

*Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980)................................................................ 21, 22, 23, 24

**Statutes**

42 U.S.C. § 1983 ................................................................ 22, 30

**Other Authorities**

Brief for Appellee-Respondent, *Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180 (2012) (No. 40861-

9-II), 2011 WA App. Ct. Briefs LEXIS 309 ................................................................ 22

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claims for prospective injunctive relief may be brought in this Court against The Regents of the University of California and Janet Napolitano despite the Eleventh Amendment?

2. Whether Plaintiffs' claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 may be brought in this Court against Janet Napolitano in her official capacity despite the Eleventh Amendment?

3. Whether Plaintiffs' claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 may be brought in this Court against Janet Napolitano in her individual capacity despite the Eleventh Amendment?

4. Whether the Court may exercise supplemental jurisdiction over Plaintiffs' claims for breach of contract, conversion, and unjust enrichment, despite the Eleventh Amendment?

5. Whether Plaintiffs have properly pled their claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983, and their claims for breach of contract, conversion, and unjust enrichment, in order to satisfy the standard of Fed. R. Civ. P. 12(b)(6)?

# INTRODUCTION

In an effort to keep Plaintiffs' property that is not theirs to keep, the University of California and its President have tried to spin this case to support their counternarrative, all in a misguided and illegal effort to keep money that must be returned to the students. Instead of focusing on the current Complaints and the appropriate standard for a motion to dismiss, Defendants point to the prior, non-operative version of the Complaints and argue the merits of the claims and defenses. They raise Eleventh Amendment immunity, trying to lead the Court to believe that it is an absolute bar to Plaintiffs' claims. It is not. Two well-established exceptions allow this case to move forward against the University of California, and its President, Janet Napolitano.

First, although sovereign immunity generally bars claims against arms of the State in Federal Court, it does not bar claims where, as here, Plaintiffs seek the return of their own property, as opposed to money from the State's coffers. Plaintiffs in these cases ask only that Defendants return what rightfully belongs to them. They do not seek money damages in excess of what the Defendants have taken. This puts these cases squarely on point with *Suever v. Connell*, 579 F.3d 1047, 1047, 1055 (9th Cir. 2009), where the Ninth Circuit ordered the State to return the plaintiffs' money, but would not order it to pay interest on top of the money that the plaintiffs argued was theirs. This exception allows all of Plaintiffs' claims against President Napolitano and the state law claims against both Defendants to move forward.

Second, Eleventh Amendment Immunity does not bar suits seeking prospective injunctive relief against state actors in their official capacity, pursuant to the long-standing Supreme Court precedent of *Ex Parte Young*. This well-known case allows Plaintiffs to sue Napolitano in her official capacity, even if the University of California has agreed to indemnify her. And, Eleventh Amendment immunity is not even arguably a bar against the claims against Napolitano in her individual capacity, since individual capacity Defendants are not considered the State or arms of the State for sovereign immunity purposes. Defendants' effort to hide behind the Eleventh Amendment is thus incorrect.

1    Unable to escape these cases on the basis of any immunity, Defendant Napolitano must face

2  the claims brought against her in her official and individual capacities under 42 U.S.C. § 1983, which

3  creates a mechanism to sue State actors for constitutional violations.  The well-pled Complaints

4  assert claims for violation of the Fifth and Fourteenth Amendments to the United States Constitution,

5  because Defendants took Plaintiffs' property, without just compensation and without due process.

6  Those claims should proceed in this Court.

7    Moreover, because the Complaints state a federal claim, the Court has supplemental

8  jurisdiction over Plaintiffs' breach of contract, unjust enrichment, and conversion common law

9  claims.[1]  These state law claims may be pled in the alternative, and Plaintiffs state a claim as to each

10  of them as well.

11                          **FACTUAL BACKGROUND**

12    Plaintiffs Claire Brandmeyer and Noah Ritter are students who attended schools within the

13  University of California system (*Brandmeyer* First Amended Class Action Complaint ("FAC") ¶ 12;

14  *Ritter* First Amended Class Action Complaint ("FAC") ¶ 12).  Like all students, including the other

15  Class members, they are required to pay mandatory fees to the University of California each

16  academic period (*Brandmeyer* FAC ¶ 4; *Ritter* FAC ¶ 4).  These fees are earmarked for specific

17  campus-related purposes (*id.*).  For example, student health service fees pay for access to and services

18  at the student health center, and transit fees pay for transit (*see Brandmeyer* FAC ¶ 25; *Ritter* FAC ¶

19  25). Students, including Plaintiffs and the other Class members, of course, are also required to pay

20  tuition to attend their Universities (*Ritter* FAC ¶ 25).[2]

21

22

23  [1] To be clear, the Eleventh Amendment is not a bar to any of Plaintiffs' state law claims against either Defendant.

24  [2] Tuition is at issue in *Ritter*, but not in *Brandmeyer*.  Plaintiffs Ritter and Brandmeyer moved to consolidate

25  their two cases, along with one other case (*see Brandmeyer* Dkt. No. 15), and moved for appointment of Brandmeyer's counsel as interim class counsel for the "Fee Class" Track and of Ritter's counsel as interim class counsel for the "Tuition Class" Track (*id.*).  While the fee and tuition claims are similar in some respects,

26  they are also different in at least one key way.  When the campuses shut down, the services and activities for

27  which the fees were supposed to pay stopped being provided entirely.  While online classes still provided some value in exchange for tuition, online classes are far inferior and less valuable than the in-person education that was previously provided.

28

In March 2020, as the global COVID-19 pandemic began to tear across the United States, State and local governments, and the Federal government, took measures to protect the health of their residents (*Brandmeyer* FAC ¶¶ 29-34; *Ritter* FAC ¶¶ 29-34).   These measures included "stay at home" orders and social distancing.   American Universities also had to respond to the pandemic.   By March 14, 2020, the University of California had announced that classes at all ten of its campuses would transition from in-person classes to online classes for the rest of the Spring 2020 academic period (*Brandmeyer* FAC ¶ 37; *Ritter* FAC ¶ 37).   All athletic events and co-curricular activities were suspended, and most campus facilities were closed (*id*.).   University of California told students to leave campus, unless they had nowhere else to go (*id*.).   And, because there were no live classes and no activities on campus anyway, combined with the fact that it was unsafe to remain in the campus environment, there was no reason for students, including Plaintiffs and the other Class members, to stay (*id*.).

With a significant portion of the academic period remaining—for which Plaintiffs and the other Class members had already fully paid their mandatory fees and tuition—students headed home to finish their Spring 2020 studies remotely.   And, although they had no legal right to do so, Defendants unilaterally decided to take and keep the remaining portion of the students' mandatory fees and tuition,[3] which the students could no longer use (*Brandmeyer* FAC ¶¶ 42-46; *Ritter* FAC ¶¶ 56-60).   Plaintiffs Brandmeyer and Ritter seek to force the Defendants to return to them what is rightfully theirs: the prorated amount of the mandatory fees that remained in the academic period when the campuses shut down.   Plaintiff Ritter also seeks to force Defendants to return a portion of tuition for the period that remained after classes moved online.   The mandatory fees and tuition are referred to collectively herein as Plaintiffs' "Property."

[3] With the campuses shut down and because they had been sent home, Plaintiffs and the other Class members could no longer use, and Defendants were no longer providing, the services that they paid for.  (*Brandmeyer* FAC ¶ 46; *Ritter* FAC ¶ 54).  Likewise, while classes were still being taught online, there were significant disparities in the quality of the online classes offered, as compared to in-person classes, such that it was not appropriate for Defendants to keep Plaintiff and the other Class members' full tuition payments (*Ritter* FAC ¶¶ 42-47).

1

**PROCEDURAL HISTORY**

2
3
4
5
6
7
8
9
10

On April 27, 2020, Plaintiff Claire Brandmeyer filed her class action lawsuit against The Regents of the University of California, concerning University of California's failure to refund compulsory and campus-based fees paid by or on behalf of students for the Spring 2020 semester, when the University of California system shut down its campuses due to COVID-19 and ceased providing the services for which the fees were paid. The Original Class Action Complaint (*Brandmeyer* Dkt. No. 1) asserted claims for breach of contract, unjust enrichment, and conversion. University of California moved to dismiss the Complaint, asserting Eleventh Amendment immunity, among other arguments. In response, Brandmeyer filed her First Amended Complaint, adding a claim under 42 U.S.C. § 1983 ("Section 1983") and adding Defendant Napolitano.

11
12
13
14
15

Plaintiff Noah Ritter filed his proposed class action on April 28, 2020 on behalf of two classes: (1) a Tuition Class seeking a partial refund of the tuition paid for Spring 2020 classes being offered remotely rather than in person; and (2) a Fee Class seeking the same refund of fees sought by Plaintiff Brandmeyer. He filed his First Amended Complaint on June 22, 2020, which also adds a Section 1983 claim and Defendant Napolitano.

16
17
18
19
20
21

Subsequently, Brandmeyer and Ritter (collectively, "Plaintiffs") moved to consolidate their cases and all other currently pending and later-filed similar cases, and to appoint interim class counsel over the "Fee Track" and the "Tuition Track" (*Brandmeyer* Dkt. No. 15). After a hearing on the Motion, the Court ruled that it would first decide this consolidated dismissal motion (*Brandmeyer* Dkt. No. 31). Accordingly, Defendants' dismissal motion addresses both the *Brandmeyer* FAC and the *Ritter* FAC.

22

**ARGUMENT**

23
24
25
26
27

In reviewing Defendants' dismissal motion, the Court must "view all of the pleaded facts as true and in the light most favorable to the plaintiff." *DISH Network LLC v. Rama*, No. 14-CV-04847-WHO, 2015 WL 217135, at *2 (N.D. Cal. Jan. 14, 2015). A dismissal motion is "not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez v. Blue Sky Natural Beverage Co.,* 340 Fed. Appx. 359, 360 (9th Cir. 2009).

28

Despite the familiar standard, Defendants litter their dismissal motion with fact- and merits-based arguments that are inappropriate in the Rule 12 context. When the Complaint's allegations are taken as true and viewed in the light most favorable to Plaintiffs, Defendants' Motion must fail.

## I.   The Eleventh Amendment Does Not Bar This Court From Hearing This Matter and Ordering the Return of Plaintiffs' and the Other Class Members' Property

As Defendants recognize, claims for *monetary* damages against the State are barred by the Eleventh Amendment, unless the State waives its Eleventh Amendment immunity, which it can do. Surprisingly, Defendants, despite receiving over $10 billion in federal aid in a normal year, plus over $400 million of additional aid this year, [4] refused to waive this immunity. Given Defendants' position, Plaintiffs amended their complaints. The First Amended Complaints are not subject to dismissal on Eleventh Amendment grounds pursuant to Fed. R. Civ. P. 12(b)(6) for at least two reasons. First, the complaints seeks the return of Plaintiffs' and the other Class members' own property that was taken without due process and just compensation; they do not seek the State's money from the State's coffers and do not seek more than the value of Plaintiffs' and the other Class members' own property. In this situation, Eleventh Amendment immunity does not apply. Second, a suit against an individual in her official capacity, for prospective injunctive relief—as the Complaints allege as to Defendant Napolitano—is not barred by the Eleventh Amendment; nor are claims against Napolitano in her individual capacity, since the Eleventh Amendment is not implicated whatsoever in an individual capacity claim.

---

[4] University of California Financial Aid Plans for CARES Act (H.R. 748), available at https://www.universityofcalifornia.edu/sites/default/files/CARES-act-funding-plans-financial-aid-portion-050820.pdf (last accessed July 22, 2020); University of California, Federal Budget, available at https://www.universityofcalifornia.edu/support-uc/ucan/federal-budget#:~:text=The%20federal%20government%20provides%20support,research%20and%20health%20care%20programs.&text=The%20National%20Institutes%20of%20Health,research%20funding%20in%20FY%202018 (last accessed July 22, 2020).

**A. Plaintiffs Seek Return of Their Own Property—not the State's Property—so the Eleventh Amendment is Not a Bar to Any of Their Claims**

Supreme Court and Ninth Circuit precedent explicitly allows Plaintiffs' claims and the relief sought to proceed.  In *Knick v. Tp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168 (June 21, 2019), the Supreme Court recently held that a "property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time."  In *Fowler v. Guerin*, 899 F.3d 1112, 1120 (9th Cir. 2018), *reh'g en banc denied*, 918 F.3d 644 (9th Cir. 2019), *pet. for cert. denied*, *Guerin v. Fowler*, No. 18-1545 (U.S., Oct. 15, 2019), the Ninth Circuit held, in no uncertain terms, that Eleventh Amendment immunity does not bar claims against the State seeking the return of money that *belonged to the plaintiffs*.  That is because the Eleventh Amendment only involves the State's money.  *Taylor v. Westly*, 402 F.3d 924- 932 (9th Cir. 2005) ("The State of California's sovereign immunity applies to the state's money."); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (holding Eleventh Amendment immunity applies when the State is a party and the judgment is "paid from public funds in the state treasury.").   As the Complaints allege, this case involves *the students'* Property (*Brandmeyer* FAC ¶¶ 50-58; *Ritter* FAC at ¶¶ 64-72).  While Defendants may choose to argue on the merits about the nature of the fees and tuition payments, what the fees and tuition payments were used for, and who the fees and tuition payments belong to, these fact issues cannot be presently resolved.

Defendants are incorrect that the exchange of money always equates to money damages.  *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990) (determining that in some instances only a monetary refund would suffice to satisfy due process and rejecting the state's invocation of Eleventh Amendment immunity); *Reich v. Collins*, 513 U.S. 106 (1994).  In *Fowler*, for instance, public school teachers sought an injunction ordering the return of savings taken from them.  899 F.3d at 1112.  Much like Defendants in this case, the defendant in *Fowler*, an arm of the State of Washington, argued that because the relief would involve money changing hands, plaintiff was seeking money damages from the State's treasury which would be foreclosed by the Eleventh Amendment.  *Id.* at 1119-20.  The Ninth Circuit rejected the State's argument, explaining that

"sovereign immunity shields the State's general fund, not… funds held for the benefit of its employees." *Id*. at 1120. In so holding, it cited *Taylor*, 402 F.3d at 932, for the proposition that "[m]oney that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are not the state's cars." So too here, Plaintiffs' and the other Class members' Property was entrusted to Defendants for a specific purpose and belongs to Plaintiffs and the other Class members unless used for that purpose. This was not meant to be money for a slush fund that Defendants could use as they please, and the well-pled Complaints allege that it is not the Defendants' money.

A long history of cases supports this analysis, including the *Lee-Malone* line of cases. In *United States v. Lee*, 106 U.S. 196, 208-11 (1882), the claimant sued for a return of his own property improperly taken by the federal government. The Supreme Court held that sovereign immunity did not bar the claim, because the plaintiff was not seeking government property, but only sought possession of that which was wrongfully taken from him. And, in *Malone v. Bowdoin*, 369 U.S. 643 (1962), the plaintiffs sought to recover possession of land that they claimed they owned. Limiting *Lee*'s application, the Supreme Court held that specific relief against the officer is available only if the officer's action is not within the officer's statutory powers, or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void. *Id*. at 647; *see also Taylor*, 402 F.3d at 933.[5]

Here, because Plaintiffs are seeking the return of their Property, the threshold requirement for putting this case within the *Lee-Malone* line of reasoning is satisfied. Moreover, Plaintiffs' claims satisfy both of the ways in which a claim can fall outside the purview of sovereign immunity under *Lee* and *Malone*. Namely, Plaintiffs allege that Defendants acted outside the scope of their authority by violating Constitutional restrictions, and that, regardless of their authority, the manner in which Defendants acted violated the Due Process and the Takings clauses of the United States Constitution,

---

[5] Contrary to Defendants' assertion (Def. Mot. at 14, n. 15), there is no need to demonstrate the government is acting in a pure custodial capacity for the exception to apply, rather the focus is on the true ownership of the property in question and lawfulness of the manner in which it was taken.

making their actions constitutionally infirm (*Brandmeyer* FAC ¶¶ 59-64; *Ritter* FAC ¶¶ ).  *See Washington v. Udall*, 417 F.2d 1310, 1316-17 (9th Cir. 1969).

Taking the well-pled allegations of the Complaints as true, as the Court must do at this stage of the case, Plaintiffs have alleged:  (i) that they seek return of their Property; (ii) which was taken from them without authority and in violation of the Constitution; and (iii) that they do not seek money from the State treasury.  *See Brandmeyer* FAC ¶¶ 59-64; *Ritter* FAC ¶¶ 64-72 (explaining how Defendants took Plaintiffs' and the other Class members' Property, in which they have a common law right).  Further case law supporting Plaintiffs' position that seeking a return of their Property does not constitute money damages, but rather, constitutes prospective injunctive relief, is discussed below. Despite the fact that this is well-established law, and despite the very recent and relevant determination in *Fowler,* Defendants sheepishly address this well-established exception to the Eleventh Amendment only in a footnote (Def. Mot. at 14, n. 15).  This exception is not a footnote to this case; this exception is a reason why Defendants' motion must be denied.  While, later on in the litigation, Defendants may choose to contest the merits of Plaintiffs' claims and argue that the evidence does not support the fact that the Property belongs to Plaintiffs and the other Class members, Plaintiffs' allegations must presently be taken as true.

In sum, the Eleventh Amendment does not bar suit against the State for return of Plaintiffs' own Property.  Plaintiffs have alleged that that is exactly what they seek.  Defendants' motion must be denied.

### B. Plaintiffs May Sue Defendant Napolitano In Her Official Capacity[6] for Prospective Injunctive Relief Under *Ex Parte Young*

Plaintiffs may also proceed against Defendant Napolitano, in her official capacity, for prospective, injunctive relief, under *Ex Parte Young*.  Defendants admit that the exception of *Ex Parte Young* will apply if Plaintiffs seek "prospective equitable relief against a state official who has

---

[6] As Defendants point out, Janet Napolitano is President of the University of California, not President of the Regents of the University of California.  This was an inadvertent error on Plaintiffs' part and Plaintiffs should be permitted to correct this error by amending their pleadings in that respect.

engaged in a continuing violation of federal law." (Def. Mot. at 12).  Here, Plaintiffs have adequately alleged the elements of the *Ex Parte Young* exception.

First, the Complaints assert claims against Defendant Napolitano in her official (and individual) capacities.  This is clear from the captions on the face of both Complaints.

Second, the Complaints allege that Defendant Napolitano has engaged in a continuing violation of Plaintiffs' Constitutional rights by continuing to retain their private Property without having provided just compensation or due process (*Brandmeyer* FAC ¶¶ 62-64; *Ritter* FAC ¶¶ 71, 77-79).  *See Taylor*, 402 F.3d at 935–36; *Fowler,* 899 F.3d at 1120.

Third, the Complaints seek prospective injunctive relief—*i.e.*, that Defendant Napolitano be required to return Plaintiffs' own Property.  That is exactly the sort of prospective injunctive relief permitted in *Fowler.*  Obviously aware of the fact that the *Young* doctrine dooms its effort to escape from this federal lawsuit, Defendants try to reframe the Complaints to suit their theories by arguing that Plaintiffs are really seeking monetary relief.  But that is not how it works, and that is not what has been alleged. The Complaints must be assumed true as pled, not as Defendants wish them to be.  For the reasons explained above, the Complaints do *not* allege, and Plaintiffs do not seek, damages.  *See also Taylor,* 402 F.3d at 932 ("Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars."); *Fowler,* 899 F.3d at 1120 ("***Prospective injunctive relief of this sort*** [*i.e.*, a state official returning money] is readily distinguishable from a compensatory damages award.") (emphasis added).

Consistent with *Ex Parte Young,* Plaintiffs seek an injunction ordering Defendants to bring their conduct into conformity with the United States Constitution and such Constitutional violations can only be cured by remitting funds unlawfully taken from them.  *See McKesson,* 496 U.S. at 31-35.  Accordingly, the Complaints adequately allege conduct that, if proven, would amount to ongoing violations of federal law in that Defendants have retained and are retaining Plaintiffs' Property without Constitutionally-mandated just compensation or due process. The Complaints request prospective relief to remedy these ongoing violations, consistent with Supreme Court precedent, including an injunction to require the Defendants to refrain from seizing Plaintiffs' and the other

1    Class members' Property under these circumstances in the future (and, of course, returning the

2    Property).

3        Defendants are incorrect that *Edelman v. Jordan* mandates dismissal of the claims against

4    Defendant Napolitano.  A key distinguishing factor is that in *Edelman*, the plaintiffs were not seeking

5    return of their own property.  In that case, overturning the United States Court of Appeals for the

6    Seventh Circuit, the Supreme Court explained that *Ex Parte Young* does not reach so far as to allow

7    recovery from the "general revenues of a State."  *Edelman*, 415 U.S. at 664.  Specifically, the

8    Supreme Court held that the Eleventh Amendment does not permit "an award of an accrued monetary

9    liability which must be met from the general revenue of the state."  *Id*.  *Edelman* involved money

10   that "should have been paid, but was not…." *Id*.  This case, on the other hand, seeks the return of

11   money that is Plaintiffs' own property, nothing more, nothing less.

12       Defendants also misconstrue *Suever v. Connell*.  In *Suever*, Plaintiffs sought the return of

13   financial assets escheated to the Controller's Office pursuant to California's unclaimed property law,

14   as well as *interest*.  The Ninth Circuit held that Plaintiffs' claims for *more than* their own property

15   were barred by the Eleventh Amendment.  579 F3d. at 1059 ("Thus, while the Eleventh Amendment

16   is no bar to Plaintiffs' claims for return of their escheated principal and the sales proceeds therefrom,

17   state sovereign immunity clearly precludes Plaintiffs from successfully obtaining *more* than that

18   amount in the form of interest.") (emphasis in original).  Here, unlike in *Suever*, Plaintiffs just want

19   their Property back.  They don't seek "*more*."

20       Defendants reliance on *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S.

21   687, 710 (1999), to argue that just compensation constitutes impermissible money damages is also

22   incorrect.  Aside from being a plurality opinion (an important point not noted by Defendants) and a

23   case not involving a governmental entity capable of invoking Eleventh Amendment immunity, the

24   essence of the case was whether the Seventh Amendment required a jury trial for the Section 1983

25   action.  Because it involved an allegation of taking without just compensation, this allegation figured

26   into the Court's Seventh Amendment analysis.  *City of Monterey* thus has nothing to do with the

27   issues relevant to Defendants' dismissal motion here.

28

1

2

3

4

5

6

7

8

     The form of injunctive relief requested in the Complaints, coupled with the fact that the indirect effect of an injunction, if any, will fall on Napolitano, and not the State, falls squarely within the *Young* doctrine and does not implicate sovereign immunity.  This is so even if the State agrees to indemnify Napolitano and uses State funds to do so.  *See Taormina v. California Dep't of Corr.*, 946 F. Supp. 829, 833 (S.D. Cal. 1996), *aff'd and remanded sub nom. Taormina v. Corr. Dep't, State of Cal.*, 132 F.3d 40 (9th Cir. 1997) (State cannot extend Eleventh Amendment immunity to officers by passing a statute indemnifying officers for judgments against them).  The motion to dismiss the Section 1983 claims against Napolitano in her official capacity should be denied.

9

10

### C. Plaintiffs' Individual Capacity Claims Against Defendant Napolitano Are Not Subject to Immunity

11

12

13

14

15

16

17

18

19

     Even if the Court finds that Plaintiffs' claims against President Napolitano in her official capacity are barred—which Plaintiffs strongly dispute—they have also named Napolitano in her individual capacity.  The Complaints' captions each clearly name "JANET NAPOLITANO, *individually* and in her capacity as President…." (emphasis added).  *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (even where it is "clear that the Eleventh Amendment will bar Pena from bringing his claims in federal court against the state officials in their official capacities[,]  [i]t will not… bar claims against the state officials in their personal capacities.").  Under either scenario, Defendant Napolitano will remain a Defendant in these cases.

20

21

22

23

24

25

26

27

     Defendants argue in a footnote (*see* Def. Mot. at 11, n.12), that the Complaints fail to make allegations sufficient to show that Defendant Napolitano engaged in the violations at issue.  Not so. State officials can be held personally liable for actions taken beyond the scope of their official duties. To succeed on the merits in such a suit, plaintiffs need show only that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In other words, Plaintiffs must plead: (1) a constitutional violation; (2) caused by specific behavior of an individual defendant; (3) entitling them damages from that individual. *Suever*, 579 F.3d at 1061.  With that in mind, the Complaints allege that:

28

- Napolitano is the President of the Regents of the University of California, that she is empowered by Article IV, Section 9 of the California Constitution, and oversees the University of California's ten universities (*Brandmeyer* FAC ¶ 16; *Ritter* FAC ¶ 16).

- Napolitano has full authority and responsibility over the administration of all affairs and operations of the University and is, thus, ultimately responsible for all policies enacted and enforced at each of the universities in the system (*Brandmeyer* FAC ¶ 17; *Ritter* FAC ¶ 17).

- Napolitano has authority and responsibility over the policy to not refund fees and tuition. *Id*.

- Napolitano is responsible to fix and determine the amount, conditions, and time of payment of all fees to be assessed against students (*Brandmeyer* FAC ¶ 18; *Ritter* FAC ¶ 18).

- At all times relevant to the Complaint, Napolitano acted under color of state law (*Brandmeyer* FAC ¶ 19; *Ritter* FAC ¶ 19).

- Napolitano issued various mandates relating to closing down the campuses (*Brandmeyer* FAC ¶¶ 36, 39-41; *Ritter* FAC ¶¶ 36, 39-41).

- Napolitano has not offered refunds of the Property that is the subject of this litigation (*Brandmeyer* FAC ¶ 42; *Ritter* FAC ¶¶ 56, 58).

- Napolitano instituted a policy and practice to retain the Property that is the subject of this litigation for Defendants' own benefit (*Brandmeyer* FAC ¶ 44; *Ritter* FAC ¶ 58).

- At Defendants' (including Napolitano's) direction, University of California officials sent a letter to the Chancellors of each of the ten Universities asserting that there is "no expectation on the part of the Office of the President [*i.e.*, Defendant Napolitano] that campuses will refund fees (*Brandmeyer* FAC ¶ 56; *Ritter* FAC ¶ 70).

Based on these allegations, the Complaints properly state a claim against Napolitano, individually, both for the Section 1983 claim, and the State law claims, which are discussed in more detail below. As President of the University of California, the buck stopped with Napolitano in terms of how Plaintiffs' and the other Class members' Property was taken and treated.  She may be sued in her individual capacity, and Plaintiffs' claims in that vein are not barred, even if the State will ultimately pay on Napolitano's behalf.  *See Taormina*, 946 F. Supp. at 833

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   Plaintiffs Have Stated Cognizable Claims For Relief that Survive Under the Rule 12(b)(6) Standard

Because Plaintiffs have alleged facts sufficient at this stage to show their claims are not barred by immunity, the next question is whether they state claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  They do.[7]

### A.  Plaintiffs State a Claim Under 42 U.S.C. § 1983 Against Napolitano in Her Official and Individual Capacities

To state a claim for a violation of 42 U.S.C. § 1983, plaintiffs "must allege the violation of a right secured by the Constitution and laws of the United States and… that the alleged deprivation was committed by a person acting under color of state law." *Ove v. Gwinn,* 264 F.3d 817, 824 (9th Cir. 2001) (quoting *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).  Here, Plaintiffs allege violations of their rights, and those of the other Class members, guaranteed by the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*Brandmeyer* FAC 50-64 ¶¶; *Ritter* FAC ¶¶ 64-79).

The Fifth Amendment to the United States Constitution states, "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. The incorporated Takings Clause has been applied to two types of governmental action: the taking of physical possession or control of property for public use, and regulations affecting private use of property. *Tahoe-Sierra Preservation Counsel. Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321-22 (2002).  The claims alleged in these actions implicate the former.

When the government takes possession of an interest in property for a public purpose, it has a categorical duty to compensate the former owner.  *United States v. Pewee Coal Co.*, 341 U.S. 114, 115 (1951).  When the government appropriates part of a rooftop, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), or when its planes use private airspace to approach an airport, *United States v. Causby*, 328 U.S. 256 (1946), it is required to pay for that share no matter how small.

---

[7] Defendants argue that that the Court may decline to exercise supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(a) if it "has dismissed all claims over which it has original jurisdiction." (Def. Mot. at 16).  But since Defendants' Motion should be denied as to the Section 1983 claim (a federal claim over which this Court has original jurisdiction) for the reasons explained herein, this issue is moot.

*Brown v. Legal Found.*, 538 U.S. 216, 233-34 (2003).  So too here, Defendants have taken Plaintiffs' property without due process, and must return that Property.

The Ninth Circuit employs "a two-step analysis to determine whether a constitutional taking has occurred:  the first step is to determine whether the subject matter is 'property' within the meaning of the Fifth Amendment and, if so, whether there has been a taking of that property, for which compensation is due." *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012).

### 1.   *Plaintiffs and the Other Class Members Have a Property Interest in Their Fee and Tuition Monies*

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  An entitlement is defined by independent sources such as state law, statutes, ordinances, regulations, or express and implied contracts.  *Id.* at 577-78; *Lucero v. Hart*, 915 F.2d 1367, 1370 (9th Cir. 1990); *Aaron v. Aguirre*, No. 06-CV-1451-H(POR), 2006 WL 8455871, at *38 (S.D. Cal. Dec. 13, 2006); *see also Benn v. Cty. of L.A.*, 150 Cal. App. 4th 478, 489-90 (2007).  To determine whether a property interest has vested for Takings Clause purposes, "the relevant inquiry is the certainty of one's expectation in the property interest at issue."  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007).

### a.   *Plaintiffs seek return of their own property*

Here, the property interest is straightforward:  Plaintiffs paid specific funds for a specific purpose.  Defendants failed to provide the services for which the funds were paid, but kept the money anyway.  Plaintiffs have a property interest in those funds.  Defendants do not and cannot reasonably dispute that the funds used to pay the fee charges were unequivocally Plaintiffs' property in the moments before they were transmitted to the University of California.  Defendants' dismissal motion concedes as much, stating "[s]uch payment of fees can no longer be considered Plaintiffs' property the moment it was tendered," but do not even attempt to carry their burden of explaining why the students' property was immediately surrendered or cite a single case supporting this argument. (Def.

1   Mot. at 14, n. 15).  Although this pivotal point is confined to a mere footnote, Defendants' motion

2   fails for this reason alone.

3          Plaintiffs have an interest in the Property.  *McGuire v. Ameritech Servs*., 253 F. Supp. 2d 988,

4   1004 (S.D. Ohio 2003) (explaining that a takings occurs "where the government confiscates

5   property").  This property interest was not relinquished merely because Defendants took possession

6   of the Property for specific purposes, any more than a trustee owns the corpus of a trust.  Rather,

7   Defendants were to hold these funds for the benefit of the students to fund various campus-based

8   services, materials, and facilities offered to them throughout the course of the academic term.  This

9   was not meant to be money for Defendants to do with as they pleased.  Thus, Plaintiffs and the other

10  Class members retained an ownership and beneficial interest in the funds that were paid and

11  earmarked for specific services, materials, and facilities that, due to COVID-19, were not provided.

12  Given this change of circumstances, these funds ought to have been promptly returned to Plaintiffs

13  and the other Class members.  But that did not happen.  Instead, Defendants, acting under the color

14  of state law, kept the money for their own purposes.  This conduct runs afoul of the California and

15  United States Constitutions, and exceeds the power vested in the Defendants.

16         There is simply no doctrine under law that permits a person or entity to induce another to pay

17  a charge for specific purposes, not fulfill those purposes, and then keep the proceeds.  And, when a

18  governmental entity is the actor the conduct amounts to an unconstitutional taking.  Defendants offer

19  no convincing argument that refutes this, nor can they explain how, under these circumstances,

20  Plaintiffs fully relinquished their property interests in the fee proceeds and somehow permitted

21  Defendants to use the money however they saw fit.  That simply is not the reality, and, more

22  importantly, it is not what has been alleged in the Complaints.

23         *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980) is instructive.  *Webb's*

24  involved a Florida statute that allowed the clerk of a court, in his discretion, to invest interpleader

25  funds deposited with that court with the interest earned to be deemed "income of the office of the

26  clerk of the circuit court."  *Id*., at 156, n. 1.  The appellant in *Webb's* had tendered nearly $2 million

27  to a state court in an interpleader action, and the court retained more than $100,000 in generated

28

interest.  The Court rejected the notion that the state court could profit off of citizens engaging with governmental entities without providing anything substantial in return.  The court held that:

> Webb's creditors . . . had more than a unilateral expectation . . . ***It was property held only for the ultimate benefit of Webb's creditors, not for the benefit of the court and not for the benefit of the county.***  And it was held only for the purpose of making a fair distribution among those creditors. Eventually, and inevitably, that fund, less proper charges authorized by the court, would be distributed among the creditors as their claims were recognized by the court. ***The creditors thus had a state-created property right to their respective portions of the fund.***

*Webb's*, 449 U.S. at 161 (emphasis added).[8]

In addition to *Webb's*, *Fowler* is, once again, helpful for this case.  In *Fowler*, pension benefit holders brought a claim under Section 1983 for a violation of the Takings Clause of the Fifth Amendment.  The plaintiffs were a class of teachers seeking an order mandating that the Director of the Washington State Department of Retirement Systems return money that was allegedly skimmed from their retirement accounts. *Fowler*, 899 F.3d at 1115.  In a prior state court action, the defendants had conceded that the plaintiff had a "***quasi-contractual interest*** in receiving the benefits promised by the terms of the pension plan."  Brief for Appellee-Respondent at 8, *Probst & Fowler v. Dep't of Ret. Sys.*, 167 Wn. App. 180 (2012) (No. 40861-9-II), 2011 WA App. Ct. Briefs LEXIS 309, at *9 (emphasis added).  Notwithstanding that quasi-contractual interest, the plaintiffs' takings claim was ultimately found to be viable.

As was the case in *Webb's* and *Fowler*, Defendants here have taken and are holding Plaintiffs' and the other Class members' Property that was transferred to them by the students for the ultimate benefit of the students in the form of various and specific services, materials, and facilities to be made available to them on campus throughout the course of the term.  Once the campuses were shut down, those items were not provided in any meaningful way such that the students have a right to a return of their respective portions of their Property for which they did not receive any benefit.

---

[8] Contrary to Defendants' assertion (Def. Mot. at 5, n. 6), the *Webb's* creditors did not need to demonstrate that they actually had an account with the Defendant for their claim to be viable.

This is not the first time that a court has scrutinized the Regents' practices with respect to fees. In *Kashmiri v. Regents of the University of California*, 156 Cal. App. 3d 809, 818-19 (1st Dist. 2007) ("*Kashmiri II*"), the University of California was found to have established the educational fee price for each student when it billed for the upcoming term without warning those students that the price as billed might change. Thus, the *Kashmiri II* court found that the Regents were liable to the students when the Regents unilaterally increased the price after billing those students. *Id*. at 848. Not surprisingly, when assessing the appropriate award, the court upheld the trial court's award of an amount equal to the fee increase (along with prejudgment interest and certain offsets), thereby returning the reasonable value of the students' property to them. *Id*. at 849. Just as Plaintiffs are asserting here, the *Kashmiri II* plaintiffs were found to have had an interest in funds they paid to the defendants equal to that amount that was wrongfully taken from them. *Id*.[9] The state law case of *Kashmiri II*, when read with the Supreme Court's ruling in *Webb's* and the Ninth Circuit rulings in *Taylor*, *Suever*, and *Fowler*, leaves no doubt that the students' own property rights are at stake here.

   b. *State Law Creates an Implied Promise that Plaintiffs' Consideration Would be Restored to Them*

Defendants attempt to define their relationship with Plaintiffs as being solely contractual in nature, and then summarily assert that, therefore, no property interest is at stake. This assertion rings hollow, particularly given the Regents' past argument "that the University's rule-making powers ***and its relationship with its students are subject to federal constitutional guarantees***." *Goldberg v. Regents of University of California*, 248 Cal.App. 2d 867, 876-877 (1st Dist. 1967) (emphasis added); *see also Kashmiri II*, 156 Cal. App. 3d at 829 (contending that different rules apply with respect to the fees because it is a statewide administrative agency with constitutionally-derived powers). Defendants must have known that their arguments here are belied by their arguments in

---

[9] While the award there was styled as damages, the *Kashmiri II* court also acknowledged there are "very few California cases addressing the relationship between the student and educational institutions." *Kashmiri II*, 156 Cal. App. 3d at 825, n.9. The court noted that "[a]lthough courts have characterized the relationship between the student and educational institution as contractual, they have recognized that contract law should not be strictly applied." *Id*. at 824. Rather, "[t]he student-university relationship is unique, and it should not be and cannot be stuffed into one doctrinal category." *Id*. (citing *Paulsen v. Golden Gate University*, 25 Cal.3d 803, 811, n. 7 (1979)).

1    other cases, although they may have hoped that no one would notice.  Whatever the reason for their

2    omission, Defendants cannot escape their own words.  Their relationship with Plaintiffs and the other

3    Class Members is subject to Constitutional guarantees.

4        Likewise, Defendants' posture on this topic is an unusual one, given that they took the precise

5    *opposite* approach in *Kashmiri v. Regents of the University of California*, No. CGC-03-422747

6    (Super. Ct. S.F. Cty. Oct. 10, 2010) ("*Kashmiri I*").  There, the Regents argued the relationship

7    between a university and a student is not subject to the actual concepts and legal maxims of contract

8    law, that no breach of contract claim can possibly be stated because no contracts were ever formed,

9    and that any alleged contracts regarding fees are incurably vague so as to preclude the creation of

10   any binding contractual duty or obligation.  The Regents' own words and prior positions thus confirm

11   that, historically, the Regents have not considered their relationship with their students to be rooted

12   in contract principles.  They cannot now run from those positions to suit their present needs.  *See GT*

13   *Beverage Co. LLC v. Coca Cola Co.*, No. SACV1000209JVSRNBX, 2010 WL 11595832, at *2

14   (C.D. Cal. Aug. 2, 2010) (judicial estoppel prevents a party from assuming a contrary position after

15   that party assumes a certain position in legal proceedings, and succeeds in maintaining that position.)

16       Defendants' argument fails for the additional reason that it ignores the fact that Plaintiffs'

17   claims are not grounded in a simple breach of an implied-in-fact contract or any implied terms

18   thereof.  Rather, Plaintiffs' claims arise from the fact that Defendants' were only permitted to use

19   Plaintiffs' Property for specific purposes, and, thereafter, Defendants either were not able or

20   otherwise refused to fulfill those purposes as intended.  Under these circumstances, the students had

21   a state-created property right to their respective portions of the fund, *see Webb's*, 449 U.S. at 161,

22   and an implied promise, grounded in state law, that the money would be refunded.

23       Specifically, under long-standing California law, where there has been a total failure of

24   consideration as to one party, the law implies a promise on the part of the other to repay what has

25   been received by him under the contract.  *Richter v. Union Land & Stock Co.*, 129 Cal. 367, 373

26   (1900).  It is hornbook law that money paid for work not done may be recovered.  The Supreme

27

28

Court has been unequivocal on this issue for more than 130 years, when it held, in *United States v. Barlow*, 132 U.S. 271, 281-82 (1889), that:

> It is familiar law that an action may be maintained to recover back money paid as the price of articles sold, or of work done, when the articles are not delivered or the work not done. The reason is that the consideration for the payment has failed . . . . "Where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the  money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it." *See also Townsend v. Crowdy*, 8 C.B.N.S. 477; *Strickland v. Turner*, 7 Exch. 208.

*See also United States v. Skinner & Eddy Corp.*, 28 F.2d 373, 379 (W.D. Wash. 1928) ("[U]pon the cancellation of the contracts [plaintiff] was deprived of an intangible value earned, of just compensation for performance, and of the perfect equivalent for the interest in the contract and the work actually performed, and was left in a pecuniarily worse position and suffered a loss for which it was not compensated.").  That remains the law today.

        c.   *Plaintiffs Have Constitutionally-Protected Property Rights Created by Contract*

Moreover, even in a strictly contractual context, the Fifth Amendment to the United States Constitution prohibits the government from impairing valid contracts in which there is a property right without just compensation.  *Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the [government] arising out of a contract with it are protected by the Fifth Amendment"); *see United States v. Central Pacific R. Co.*, 118 U. S. 235 (1886); *United States v. Northern Pacific Ry. Co*., 256 U.S. 51 (1921).  This applies to the government's own contracts. *Id*.; *Far W. Fed. Bank, S.B. v. Dir., Office of Thrift Supervision*, 746 F. Supp. 1042, 1049 (D. Or. 1990), *rev'd on other grounds,* 951 F.2d 1093 (9th Cir. 1991).  "The case law clearly establishes that a property interest can be created through… principles of contract law." *Vail v. Bd. of Educ.*, 706 F.2d 1435, 1437-38 (7th Cir. 1983) ("implied contracts as sufficient to constitute a protected property interest"); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (the existence of an implied or express

contract "clearly is evidence of a formal understanding that supports [a plaintiff's] claim of entitlement").  To establish a property interest in a governmental contract or benefit, a claimant must have more than a "unilateral expectation" or "abstract need," and must show a legitimate claim of entitlement. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984); *Roth*, 408 U.S. at 577; *Carteret Sav. Bank, FA v. Office of Thrift Supervision*, 762 F. Supp. 1159, 1180 (D.N.J. 1991) ("This contract right was created as a result of a bargained exchange and, therefore, is more than a 'unilateral expectation' or 'abstract need.'").

California state law is in accord.  "The rule requiring compensation for property taken for or injured in connection with public use has been held to apply to personal property, such as valid contracts and contractual rights . . . ."  *City of Oakland v. Oakland Raiders*, 32 Cal.3d 60, 66–67 (1982); *see also Cotta v. City & Cty. of S.F.*, 157 Cal. App. 4th 1550, 1567-68 (2007); *Sutter Butte Canal Co. v. R.R. Com. of Cal.*, 202 Cal. 179, 184 (1927) *aff'd*, 279 U.S. 125 (1929).  It cannot be disputed that a contract with a governmental entity is secured by the United States Constitution against impairment by subsequent state legislation (*see County of Los Angeles v. Southern Cal. Tel. Co.*, 32 Cal.2d 378, 382 (1948)) and that a party's rights thereunder cannot be taken for public use without making just compensation. *S. Cal. Gas Co. v. Los Angeles*, 50 Cal. 2d 713, 716 (1958).

Because Plaintiffs and the other Class members clearly have a property right in their Property which Defendant took, the Section 1983 claims survive Defendants' Motion.

## 2. *Defendant Napolitano Took Plaintiffs' and the Other Class Members Property Without Due Process*

### a. *Defendant Napolitano Took Plaintiffs' Property*

Here, a Taking occurred because Defendants took Plaintiffs' Property while providing in value, far less than it was worth.  "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." *United States v. Sperry Corp.*, 493 U.S. 52, 63 (1989).  But while a "governmental body has an obvious interest in making those who specifically benefit from its services pay the cost . . . ," the fee must be "be a fair approximation of the cost of benefits supplied."  *Massachusetts v. United States*, 435 U.S. 444, 462 (1978) (plurality opinion);

*see also Sueoka v. United States*, 101 F. Appx. 649, 655 (9th Cir. 2004). Thus, a Takings claim is available when "the charges are unreasonable or unrelated" to the services being provided. *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003); *see also Sperry Corp*., 493 U.S. at 62 (excessive fees belie their purported character as user fees so as to constitute a Taking); *see also Tristani v. Richman*, 609 F. Supp. 2d 423, 476-77 (W.D. Pa. 2009) (finding that a Taking did not occur because the government agency collected no more money from plaintiff than it had already spent for his benefit).

In *Sueoka,* 101 F. Appx. at 655*,* the district court ordered the government to disgorge the bond interest generated by the claimant's property while in the government's possession. The government, however, contended on appeal that the retention of interest on Schauer's bond constituted a reasonable user fee. *Id*. The court rejected this argument "because the government failed to provide sufficient evidence that the interest was actually used to pay for the cost of government services or was a fair approximation of the costs of benefits supplied." *Id*. Thus, the onus is on the governmental entity—not the plaintiff—to demonstrate that the fee usage was fair and appropriate.

In *Vance*, the plaintiff alleged Fifth and Fourteenth Amendment violations for deductions of accrued interest from his inmate trust account, based on a Nevada statute authorizing "applicable charges" for administrative user fees. 345 F.3d at 1089. In that case, the Ninth Circuit held that the plaintiff's Fifth Amendment claim failed "[b]ecause Vance does not allege that the charges are unreasonable or unrelated to the administration of his account." *Id.* at 1090 (citations omitted).

Here, like *Sueoka*, and unlike in *Vance*, the Complaints allege that due to the cessation of campus operations, Defendants' retention and usage of the fee proceeds thereafter had no relation to the purposes for which they were assessed. Nor could they. Those fees were set, assessed, and paid at a time when the Regents and the students both incorrectly contemplated that campuses would be fully operational. It is impossible that Defendants used Plaintiffs' Property as anticipated, since the services and activities for which the fees and tuition were paid were not provided. Thus, a fair reading of the Complaints shows that the fees and tuition assessed are "essentially unreasonable and unrelated to [plaintiff's] usage." *Hausken v. Lewis*, No. C12-5882 BHS-JRC, 2013 WL 5176913, at

*16 (W.D. Wash. Sep. 12, 2013).  And it is only the allegations of the Complaint that most for purposes of this motion.

**b.**  *Plaintiffs Were Not Afforded Due Process*

Defendants brazenly and unequivocally argue that the moment Plaintiffs handed over their own money to pay the fees, if they ever wanted that money back, their sole recourse would be to commence litigation and pursue a breach of contract claim (Def. Mot. at 18).  Notwithstanding the fact that students are living in the midst of a global pandemic and, in some instances, being displaced from their homes and possibly without resources to pursue a lawsuit against the powers of the government, Defendants, by this perverse argument, suggest that students should have to spend more of their money to retain counsel or navigate the court system themselves in order to obtain a refund of their own money that Defendants wrongfully took from them (*id*.).

Setting aside the offensive nature of the argument, Defendants are betrayed by their own motion.  Defendants, relying on both state and federal jurisprudence, go into great detail to explain why each of the state law claims is not cognizable and fails as a matter of law.  Defendants, therefore, cannot reconcile their argument that "Plaintiffs cannot establish the existence of a contract, much less the breach of one" (Def. Mot. at 23), with their assertion that "Plaintiffs' due process claim has an adequate state law remedy available via a breach of contract claim." (Def. Mot. at 18).

In an effort to support their argument, Defendants rely on the fractured decision in *DeBoer v. Pennington*, 287 F.3d 748, 749-50 (9th Cir. 2002) (discussing *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001)), wherein, as the dissent points out, the court did not "tell us why the termination of DeBoer's personal service contract is not entitled to due process protection." ,Additionally, Defendants fail to acknowledge that, unlike here, the plaintiff in *DeBoer* had an express agreement which it contracted as a mere vendor to the defendant city. *See generally S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962. 965-67 (2d Cir. 1988) ("We hesitate . . . to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor."). As a consequence, the alleged

due process violation naturally failed because the contract set forth the rights of the parties rather than constitutional principles. Not so here, as has already been explained above.

But, of even greater importance is the fact that the defendant city in *DeBoer* merely exercised its ability to terminate its contractual relationship with the plaintiff pursuant to the contract. Conversely, here, the Complaints allege that Defendants knowingly violated the students' Constitutional rights pursuant to an official policy. The Supreme Court has emphasized the importance of the due process clause protections, specifically in this context. In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) the Court discussed the nuances as to when state law claims provide adequate due process and when they do not. There, a state statutory scheme barred employment discrimination on the basis of physical handicap, but imposed a 120-day procedural time limitation, or the right to redress the discrimination was barred. After finding the discrimination cause of action was a protected property right, the court distinguished between actions challenging the public entity's particular "error" with the "established state procedure" that destroys his entitlement without according him proper procedural safeguards. Plaintiffs' due process claim here clearly challenges the policy and procedures (or lack thereof) under which Defendants deprived the Plaintiffs' of their property, as opposed to any particular contractual event.

Moreover, the United States Supreme Court has "emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus, it has become a truism that '*some* form of hearing' is required *before* the owner is finally deprived of a protected property interest." *Logan.*, 455 U.S. at 433-34 (citing *Board of Regents v. Roth*, 408 U.S. at 670-671, n. 8) (emphasis added). "To put it as plainly as possible, the State may not finally destroy a property interest without *first* giving the putative owner an opportunity to present his claim of entitlement." *Id.* (citing *Bell v. Burson*, 402 U.S. 535, 542 (1971)) (emphasis added). That is particularly true where, as here, the State's only post-deprivation process comes in the form of an independent state law action. *Id.* at 437 (acknowledging that seeking redress through a state lawsuit is apt to be a lengthy and speculative process).

Lastly, the remedy sought here, return of Plaintiffs' and the other Class members' Property, has long been explicitly sanctioned as appropriate in the due process context such as this.  *See, e.g.*, *McKesson*, 496 U.S. at 18.  In *McKesson*, the State of Florida revised its liquor excise tax scheme to conform with Supreme Court precedent but refused to refund plaintiff the amount of the excess taxes it had paid as a result of the unconstitutional tax.  *Id.* at 18.  The Court held that because the State did not provide a meaningful opportunity for pre-deprivation relief, in a post-deprivation refund action, the State must provide distributors not only a fair opportunity to challenge the accuracy and legal validity of their obligation but also a "clear and certain remedy" (*Atchison, T. & S.F.R. Co. v. O'Connor*, 223 U. S. 280, 285 (1912)), for any erroneous collection of money.  *Id.* at 39.  In discussing what clear and certain remedies may suffice, where the collection is constitutionally invalid, the State would have had no choice but to "undo" the unlawful deprivation by refunding the money previously collected.  *Id.*[10]  Here, too, the appropriate remedy is returning Plaintiffs' Property.

Defendants had the opportunity to institute proper procedural safeguards for students seeking to assert an entitlement to the fees and tuition they paid before they decided that no refunds would be offered.  Defendants established none and, instead, chose to keep what was not theirs and would force the students to do something about it by litigating their claim of entitlement in these challenging times.  The law rejects this notion—when no pre-deprivation process is offered, redress through a state lawsuit will not suffice.  Rather, the Defendants must undo the unlawful deprivation.  Plaintiffs' constitutional claims are thus not subject to dismissal.

## B.  Plaintiffs' Common Law Claims Are Also Adequately Pleaded

Plaintiffs' Complaints each adequately allege the required elements of the common law claims of breach of contract, unjust enrichment, and conversion.  Defendants make much ado about Plaintiffs' section 1983 claims being "nothing more than repackaged state law breach of contract claims." (Def. Mot. at 3).  This ignores that, as a matter of historical practice, claims that the

---

[10] The court rejected the notion that the State's interest in financial stability does not justify a refusal to provide relief, explaining that the government had the opportunity to avail itself of a variety of procedural protections pre-deprivation, such as a short statute of limitation or that a refund will only be made to those who protest. *McKesson*, 496 U.S. at 50.

government has taken property without providing just compensation have been framed as common-law actions.  *City of Monterey*, 526 U.S. at 715; s*ee, e.g.*, *Richards v. Washington Terminal Co.*, 233 U.S. 546 (1914) (nuisance); *Pumpelly v. Green Bay Co.*, 80 U.S. 166 (1872) (trespass on the case); *Barron ex rel. Tiernan v. Mayor of Baltimore*, 7 Peters 243 (1833) (unspecified tort); *Bradshaw v. Rodgers*, 20 Johns. 103 (N.Y. 1822) (trespass).

Plaintiffs' common law claims here are merely different avenues to the same sought-after result:  just compensation for the taking of Plaintiffs' and the other Class members' Property.  They may be brought *in the alternative* to the Section 1983 claim, and to each other.  Despite Defendants' blunderbuss attempt to paint the state law claims as not cognizable, a plain reading of the Complaints demonstrates that each of these causes of actions was sufficiently pled with respect to each claim's essential elements and supported with articulated facts, so as to put the Defendants on notice of the grievance being asserted against them.

Defendants' arguments on those claims are riddled with inconsistencies, contradictions, and dubious legal assertions. First, the arguments contradict one another. Defendants contend that the conversion claim cannot proceed because the parties' relationship is contractual, but nor can the breach of contract proceed because students cannot establish the existence of a contract, much less the breach of one, but unjust enrichment is also unavailable here as there exists a valid express contract covering the same subject matter (Def. Mot. at 20-24.)  Defendants are speaking every which way, hoping that something sticks.  As was the case with the constitutional claims, Defendants cannot have it both ways (or, in this instance, three ways).

Moreover, contrary to Defendants' outdated contention, "[t]he California Supreme Court has clarified California law and allowed independent claims for unjust enrichment to proceed."  *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, 2020 WL 2214152, at *18-19 (S.D. Cal. May 7, 2020); *Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg.*, 61 Cal. 4th 988, 1000 (2015)). Lastly, Defendants absurdly contend that Plaintiffs need to specify the exact sum of money owed at the pleadings stage to sustain a conversion claim—but that is not the standard.  "[O]ur law has dispensed

with the old requirement that 'each coin or bill be earmarked,' it remains the case that 'money cannot be the subject of an action for conversion unless a specific sum *capable* of identification is involved.'"  *Haigler v. Donnelly*, 18 Cal.2d 674, 681 (1941) (emphasis added); *see PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007); *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019).

Because these claims are viable, fall outside the purview of the Eleventh Amendment,  and are intertwined with the same operative facts as the claims upon which this court has original jurisdiction, this Court should exercise supplemental jurisdiction over them. [11]

### CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be denied.

Dated: July 31, 2020                                Respectfully submitted,


                                                    /s/ Eric M. Poulin
                                                    Eric M. Poulin (CA Bar No. 298476)
                                                    Roy T. Willey, IV*
                                                    **ANASTOPOULO LAW FIRM, LLC**
                                                    32 Ann Street
                                                    Charleston, South Carolina  29403
                                                    Tel.:  877-614-8888
                                                    eric@akimlawfirm.com
                                                    roy@akimlawfirm.com

                                                    *Admitted Pro Hac Vice*

---

[11] If Plaintiffs' breach of contract claim fails, as Defendants argue it should, then Plaintiffs should also be granted leave to amend their pleading to add a constitutional claim under the Contract Clause pursuant to 42 U.S.C. § 1983. *See Ross v. City of Berkeley*, 655 F. Supp. 820, 827 (N.D. Cal. 1987) (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983)).  Defendants also argue that claims for injunction and attorneys' fees are remedies, not causes of action.  To the extent that the Court agrees with that characterization, Plaintiffs should be allowed to amend their Complaints to clarify that they seek these remedies.  Regardless of the nomenclature, Plaintiffs are entitled to an injunction to stop Defendants' unconstitutional and illegal activities, and to their fees and expenses associated with doing so.  To the extent the Court dismisses any of the claims, the dismissal should be without prejudice so that Plaintiffs may supplement their existing claims based on the principles discussed and argued herein.

John C. Bohren (CA Bar No. 295292)
**BOHREN LAW**
501 West Broadway Suite 800
San Diego, California  92101
Tel.:  619-433-2803
yanni@bohrenlaw.com

*Counsel for Plaintiff Ritter and the Proposed "Tuition Track" Class*

Adam J. Levitt*
Laura E. Reasons*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
lreasons@dicellolevitt.com

Matthew S. Miller*
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois  60601
Tel.:  312-741-1085
mmiller@msmillerlaw.com

C. Moze Cowper
Noel E. Garcia
**COWPER LAW PC**
10880 Wilshire Boulevard, Suite 1840
Los Angeles, California  90024
Tel.:  877-529-3707
mcowper@cowperlaw.com
ngarcia@cowperlaw.com

*Admitted Pro Hac Vice

*Counsel for Plaintiff Brandmeyer and the Proposed "Fee Track" Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I am a resident of the state of South Carolina, I am over the age of 18 years, I am not a party to this lawsuit. My business address is Anastopoulo Law Firm, LLC, 32 Ann Street, Charleston, South Carolina 29403. On the date set forth below, I served the following documents:12

### PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

on the interested part(ies) in this action in the following manner:

BY ELECTRONIC SERVICE: I caused the documents to be sent to the person(s) at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Karen G. Johnson-McKewan<br>Randy Luskey<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, California 94105<br>kjohnson-mckewan@orrick.com<br>rluskey@orrick.com<br><br>William A. Molinski<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>777 South Figueroa Street, Suite 3200<br>Los Angeles, California 90017<br>wmolinski@orrick.com | *Attorneys for Defendant The Regents of the University of California* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 31, 2020, at Charleston, South Carolina.

/s/ *Eric M. Poulni*
Eric M. Poulin
Anastopoulo Law Firm, LLC

12 This document was filed and served on July 22, 2020 in the related case, 3:20-cv-02886-SK. The cases were related by order dated June 17, 2020 [ECF 19] and on June 22, 2020, the Court set a briefing schedule requiring one set of briefing from each party. [ECF 20]. The Clerk issued notice on July 30, 2020 [ECF 25] reminding counsel to make all filings on both related dockets. This document is being filed in 3:20-cv-02925-SK pursuant to that notice.