UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAIRE BRANDMEYER,<br><br>    Plaintiff,<br><br>    v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>    Defendants.<br>_____<br><br>NOAH RITTER,<br><br>    Plaintiff,<br><br>    v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant. | **ORDER GRANTING MOTIONS TO DISMISS**<br><br>Case No. 20-cv-02886-SK<br><br>Regarding Docket No. 33<br><br><br><br>Case No. 20-cv-02925-SK<br><br>Regarding Docket No. 22 |

Defendants move to dismiss the First Amended Complaints in both these actions. For the reasons set forth below, the Court GRANTS the motion to dismiss.

## PROCEDURAL HISTORY

Plaintiff Claire Brandmeyer ("Brandmeyer") filed a proposed class action complaint on April 27, 2020, against Defendants the Regents of the University of California and Janet Napolitano, the President of the Regents of the University of California (collectively, "Defendants"), *Brandmeyer v. Regents of the University of California*, *et al.*, 20-02886-SK ("*Brandmeyer*"). (Dkt. 1.) Defendants had previously moved to dismiss the *Brandmeyer*

complaint on June 8, 2020. (Dkt. 25.) On June 11, 2020, Brandmeyer filed an amended complaint ("*Brandmeyer* FAC"), mooting the initial motion to dismiss. (Dkt. 27.)

Plaintiff Noah Ritter ("Ritter," or collectively with Brandmeyer and the putative class members, "Plaintiffs") filed a proposed class action complaint on April 28, 2020, against the same Defendants, *Ritter v. Regents of the University of California*, 3:20-cv-02925-JCS ("*Ritter*"). (*Ritter* Dkt. 1.) Defendants moved to dismiss the *Ritter* complaint on June 8, 2020. (*Ritter* Dkt. 16.) On June 22, 2020, Ritter filed an amended complaint ("*Ritter* FAC"), mooting the motion to dismiss. (*Ritter* Dkt. 21.)

On May 15, 2020, Brandmeyer moved to consolidate *Brandmeyer* with *Ritter* and *Lee v. Regents of the University of California*, 3:20-cv-03241-RS ("*Lee*"). (Dkt. 15.) Brandmeyer simultaneously moved to bifurcate the proposed class into two tracks based on type of claim and to appoint interim class counsel for each track. (*Id.*) The plaintiff in *Lee* dismissed that action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1) on May 27, 2020. (*Lee* Dkt. 12.) On June 2, 2020, Brandmeyer filed an administrative motion requesting that the Court relate *Brandmeyer* and *Ritter*. (Dkt. 23.) Defendants did not oppose the motion to relate, and on June 17, 2020, the Court related the two actions. (Dkt. 30; *Ritter* Dkt. 19.)

The Court held a hearing on June 22, 2020. (Dkt. 31.) At the hearing, Defendants informed the Court that they intended to move to dismiss both the *Brandmeyer* FAC and the *Ritter* FAC, which Plaintiffs agreed to file the same day, for lack of subject matter jurisdiction. The Court ruled that consideration of the motion to consolidate would be inappropriate prior to deciding the issue of subject matter jurisdiction. (*Id.*) The Court set a consolidated briefing schedule for motions to dismiss, with identical briefing to be submitted in both cases. (Dkt. 32.)[1] Defendants moved to dismiss the *Brandmeyer* FAC and the *Ritter* FAC for lack of subject matter jurisdiction. (Dkt. 33.) Plaintiffs opposed the motions. (Dkt. 40.) Defendants replied (Dkt. 47), and the Court granted Plaintiffs leave to file a surreply (Dkt. 50), which Plaintiffs filed on August 27, 2020 (Dkt. 51). The Court set a hearing on the motions to dismiss for October 5, 2020. (Dkt.

---

[1] In discussing the briefing on the motions to dismiss, the Court therefore refers only to the docket numbers in the *Brandmeyer* action, though identical copies of the briefing were filed on both dockets. The Court continues to refer to plural "motions," however, as the cases have not been formally consolidated.

50.) On October 2, 2020, Defendants filed an administrative motion to notify the Court of additional relevant case law discovered during Defendants' counsel's preparation for oral argument. (Dkt. 58.) Plaintiffs opposed the administrative motion. (Dkts. 59, 60.) The Court GRANTS the administrative motion to notify the Court of additional case law.

The Court held oral argument on October 5, 2020, and took the matter under submission. (Dkt. 61.) All parties have consented to the jurisdiction of the Undersigned pursuant to 28 U.S.C. § 636. (Dkts. 13, 22; *Ritter* Dkts. 12, 15.)

Having considered the submissions of the parties, the relevant legal authorities, and the record in the case, and having had the benefit of oral argument, the Court GRANTS Defendants' motions to dismiss, for the reasons set forth below.

## BACKGROUND

Defendant the Regents of the University of California (the "Regents") is formed under Article IX of the California constitution and oversees the ten universities within the University of California ("UC") system. (Dkt. 27 ¶ 13.)[2] Defendant Janet Napolitano ("Napolitano") is the President of the Regents of the University of California, and Article IX of the California constitution empowers her to oversee the ten UC universities. (*Id.* ¶ 16.) Napolitano is the executive officer of the UC system. (*Id.* ¶ 17.) Brandmeyer is a student at the University of California at Davis and a citizen of the State of California. (*Id.* ¶ 12.) Brandmeyer paid mandatory fees to attend UC for the Spring 2020 semester, including student services fees, campus-based fees, and course material fees. (*Id.* ¶ 23.) Brandmeyer alleges that the mandatory fees she paid for the 2019-2020 academic year at UC Davis included the following: campus expansion initiative ($595.04); facilities and campus enhancements fee ($450.21); student services maintenance fee/student services initiative fee ($380.90); student health services fee ($163.29); associated students of UC Davis fee ($105); memorial union fee ($85.50); student facilities safety fee ($66); Unitrans ($58); California aggie fee ($12.33); green initiative fund fee ($9); and student services fee ($1,128). (*Id.* ¶¶ 25, 26.)

In January of 2020, the first cases of the illness caused by novel coronavirus COVID-19 ("COVID-19") were reported in the United States. (*Id.* ¶ 29.) In March 2020, states, cities, and

---

[2] Although seemingly plural, the term "Regents" is generally considered to be a singular entity and treated as such for grammatical purposes.

municipalities began to order social distancing measures to slow the spread of COVID-19. (*Id.* ¶ 30.) On March 4, 2020, California Governor Gavin Newsom issued a Proclamation of a State of Emergency. (*Id.* ¶ 31.) On March 19, 2020, Governor Newsom issued an executive order requiring all California citizens not designated as employees of critical infrastructure sectors to stay at home unless obtaining access to necessities. (*Id.* ¶ 33.) On approximately March 14, 2020, Defendants ordered that classes at all UC campuses would transition from in-person to online instruction for the remainder of the Spring 2020 semester. (*Id.* ¶ 37.) Students were instructed to move off campus unless they had no other option, and all athletic events and extracurricular activities were suspended. (*Id.*)

Many students left campuses to return home, where they were no longer able to access services and facilities supported by their mandatory fees. (*Id.* ¶ 41.) For the few students who remained on campus, facilities were closed, and campus services became extremely limited. (*Id.*) Defendants have not refunded students' mandatory fees despite the fact that students lost access to services and facilities. (*Id.* ¶ 44.) On behalf of herself and all other UC students, parents, or guardians who paid fees on behalf of themselves or other students enrolled at any UC campus for the Spring 2020 semester, Brandmeyer brings several claims. (*Id.* ¶¶ 65, 76-120.) Brandmeyer seeks declaratory relief as to whether Plaintiffs have a common law property interest in their mandatory fees and as to whether Defendants' retention of the fees violates principles of due process instantiated in the California and United States constitutions. (*Id.* ¶¶ 76-80.) Brandmeyer alleges, pursuant to 42 U.S.C. § 1983, that Defendants' retention of the mandatory fees violates the due process clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment of the U.S. Constitution. (*Id.* ¶¶ 80-91.) Brandmeyer alleges that Defendants have breached their contract with students in retaining the fees. (*Id.* ¶¶ 92-99.) Brandmeyer alleges that Defendants have been unjustly enriched as a result of their retention of the fees. (*Id.* ¶¶ 100-105.) Brandmeyer alleges that Defendants have converted the mandatory fees. (*Id.* ¶¶ 106-113.) Brandmeyer seeks injunctive relief ordering the payment of the fees to a common fund from which refunds can be distributed, as well as payment of attorneys' fees. (*Id.* ¶¶ 114- 120.)

Ritter is a full-time student at UC Berkeley and a citizen of California. (*Ritter* Dkt. 21 ¶ 12.) Ritter alleges that he paid tuition and mandatory fees for the Spring 2020 semester. (*Id.* ¶ 23, 25.) Ritter alleges that his mandatory fees for the 2019-2020 academic year included: associated

4

students of UC ($33.50); student center ($6.00); ethnic studies ($2.25); life safety ($46.00); recruitment and retention centers ($27.00); campus health care ($81.00); green initiative fund ($8.00); lower Sproul fee ($261.00); Daily Cal VOICE ($2.50); student technology ($51.00); wellness ($174.00); educational opportunity and equity ($20.00); campus climate and equity ($29.75); housing security ($4.75); student basic needs ($15.00); class pass transit fee; course materials and services; document management; health insurance; international office services ($56.00); new student programming ($475.00); student services ($564.00); and student services fee ($1,128). (*Id.* ¶¶ 25, 26.) Ritter makes similar allegations to Brandmeyer regarding the spread of COVID-19 and the public health response. (*Id.* ¶¶ 29-35.) Ritter also alleges that Defendants transitioned to remote instruction and encouraged students to move off campus in mid-March. (*Id.* ¶¶ 36, 37.) Students chose to leave campus and lost access to facilities and services supported by their mandatory fees. (*Id.* ¶ 38.) For those who remained, services were severely curtailed and facilities were closed. (*Id.* ¶ 41.) Ritter alleges that students were deprived of the full value of their tuition due to the lower quality of virtual versus in person instruction and the loss of quintessential aspects of the college experience, including in person interaction with instructors and peers. (*Id.* ¶¶ 42-47.) Ritter alleges that Defendants did not refund mandatory fees or tuition to UC students despite their loss of access to facilities, services, and in person instruction. (*Id.* ¶ 56.) Ritter proposes two classes of similarly situated plaintiff; one class for those who paid tuition for UC students for the Spring 2020 semester, and one class for those who paid fees for UC students for the Spring 2020 semester. (*Id.* ¶ 80.)

On behalf of those putative class members, Ritter seeks declaratory relief as to whether Plaintiffs have a common law property interest in their tuition and mandatory fees and as to whether Defendants' retention of the tuition and fees violates principles of due process instantiated in the California and United States constitutions. (*Id.* ¶¶ 91-95; 132-136.) Ritter alleges, pursuant to 42 U.S.C. § 1983, that Defendants' retention of the tuition and mandatory fees violates the due process clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment of the U.S. Constitution. (*Id.* ¶¶ 96-106; 137-147.) Ritter alleges that Defendants have breached their contract with students in retaining the tuition and fees. (*Id.* ¶¶ 107-114; 148-155.) Ritter alleges that Defendants have been unjustly enriched as a result of their retention of the tuition and fees. (*Id.* ¶¶ 115-120; 156-161.) Ritter alleges that Defendants have converted the tuition and

fees. (*Id.* ¶¶ 121-128; 162-169.) Ritter seeks injunctive relief ordering the refund of tuition and fees. (*Id.* ¶¶ 129-131; 170-172.) Ritter seeks the establishment of a common fund from which refunds can be paid and attorneys' fees. (*Id.* ¶¶ 173-176.)

In their motions to dismiss, Defendants argue that the Eleventh Amendment bars Plaintiffs' lawsuits against the Regents and Napolitano in her official capacity because the Regents and Napolitano are instrumentalities and agents of the state, respectively, and because Plaintiffs are seeking retroactive relief in the form of money damages. (Dkt. 33.) Defendants further argue that Plaintiffs have not stated claims pursuant to 42 U.S.C. § 1983 against Napolitano in her individual capacity. (*Id.*)

Plaintiffs counter that they are seeking the return of property held on their behalf by the state and taken without due process or just compensation, so they are not seeking monetary damages prohibited by the Eleventh Amendment. (Dkt. 40.) Plaintiffs further contend that the *Ex Parte Young* doctrine applies to their suits against Napolitano in her official capacity because they are seeking prospective relief in the form of an injunction to return their property. (*Id.*) Finally, Plaintiffs argue that they have sufficiently stated claims against Napolitano in her individual capacity under 42 U.S.C. § 1983.

**DISCUSSION**

The Eleventh Amendment bars suit in these cases. The Eleventh Amendment establishes:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"This language expressly encompasses only suits brought against a State by citizens of another State, but" the Supreme Court has long "held that the Amendment bars suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Thus, "[t]he Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (citing *Papasan*, 478 U.S. at 276).

A state's immunity from suit under the Eleventh Amendment extends to the state's agents

or instrumentalities. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment."); *see also Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 941 (9th Cir. 2019), *cert. denied sub nom. Boyd v. California Pub. Utilities Comm'n*, 140 S. Ct. 2645, 206 L. Ed. 2d 715 (2020). "When the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials" or instrumentalities "are nominal defendants." *Edelman*, 415 U.S. at 663 (citation omitted). States retain immunity from suit even in actions brought under 42 U.S.C. § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment precludes such suits unless a State has waived its immunity or Congress has abrogated its immunity under § 5 of the Fourteenth Amendment. *Id.* "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance." *Id.* The immunity of a State in this context also extends to state officials acting in their official capacity. *Id.* at 71.

An Eleventh Amendment challenge does not raise the issue of a court's subject matter jurisdiction. "The Eleventh Amendment […] does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998). Thus, the Eleventh Amendment operates as an affirmative defense to suit and "a personal privilege that the state may waive." *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 760 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Defendants have invoked their Eleventh Amendment defense in these cases. (Dkts. 25, 33.)

However, the doctrine of *Ex Parte Young* establishes an exception to the Eleventh Amendment prohibition. "Under *Ex Parte Young* and its progeny, a suit seeking prospective equitable relief against a state official who has engaged in a continuing violation of federal law is

7

not deemed to be a suit against the State for purposes of state sovereign immunity." *In re Ellett*, 254 F.3d 1135, 1138 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (Aug. 27, 2001) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). A suit is cognizable under *Ex Parte Young* where "the underlying authorization upon which the named official acts is asserted to be illegal," the alleged violation of federal law is ongoing, and the violation would be ended by affording the relief sought. *Papasan*, 478 U.S. at 277-78. "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Id.* at 278.

**A.  The Eleventh Amendment Bars Suit Against the Regents.**

The Supreme Court has held that Defendant the Regents is an instrumentality of the State of California. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429-31 (1997). The Ninth Circuit has repeatedly held the same. *Feied v. The Regents of the Univ. of California*, 188 F. App'x 559, 561 (9th Cir. 2006) (collecting cases). Therefore, the Eleventh Amendment bars this suit against them. Plaintiffs seek a remedy for asserted violations of their rights in the form of financial compensation; the State of California is therefore the substantial party in interest in these cases and is entitled to invoke its sovereign immunity from suit, as Defendants have done on behalf of the State here. *Edelman*, 415 U.S. at 663; *Will*, 491 U.S. at 66.

**B.  The Eleventh Amendment Bars Suit against Napolitano in Her Official Capacity.**

Similarly, Napolitano in her official capacity is an agent of the State of California. *Edelman*, 415 U.S. at 663. Again, because Plaintiffs seek relief in the form of money damages, as discussed below, the State of California is the substantial party in interest in these cases and is entitled to invoke its sovereign immunity from suit, as Defendants have done on behalf of the State here. *Edelman*, 415 U.S. at 663; *Will*, 491 U.S. at 66.

Because the Court finds that the Eleventh Amendment inquiry is dispositive, the Court does not elaborate the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or consider the arguments of the parties addressed to the sufficiency of the complaints.

8

### C. Plaintiffs Have Not Stated Claims against Napolitano in Her Individual Capacity and Napolitano Is Entitled to Qualified Immunity.

Neither First Amended Complaint states a claim for relief against Napolitano in her individual capacity. To state a claim against a state official in her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Such allegations must include specific facts linking the individual defendant to the constitutional violations alleged. *Ortez v. Washington Cty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996). Here, the First Amended Complaints, asserting that Napolitano is the President of the UC university system and presided over the decision to close campuses, makes only boilerplate allegations regarding Napolitano, but the First Amended Complaint does not detail her individual, personal involvement with the claims at issue. (Dkt. 27 ¶¶ 36, 39-40; *Ritter* Dkt.21 ¶¶ 36, 40.) Accordingly, neither First Amended Complaint provides the detailed allegations required to state a claim against Napolitano in her individual capacity.

Further, even had Plaintiffs sufficiently stated individual claims against Napolitano, she is entitled to qualified immunity. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "'clearly established'" at the time of the challenged conduct. *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. *Id.* (citation and quotation marks omitted). The Supreme Court has "repeatedly told courts – and the Ninth Circuit in particular – not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1775-76 (2015) (quoting *al-Kidd*, 563 U.S. at 742).

At oral argument, the Court asked Plaintiffs' counsel to point to clearly established law indicating that Napolitano's conduct was unconstitutional. Plaintiffs' counsel pointed to *Horne v. Dep't of Agriculture*, 576 U.S. 350, 352 (2015), which stands for the proposition that "[t]he Fifth

1  Amendment requires that the Government pay just compensation when it takes personal property, just as when it takes real property." This precedent is far too general, and its applicability to these facts far too tenuous, to have placed a reasonable university official on notice that retaining student tuition and fees during the situation presented by COVID would constitute unconstitutional conduct. As the Court made clear at oral argument, the Supreme Court requires a case with similar facts to cross the threshold of clearly established law and set aside an official's qualified immunity. *Horne* is not such a case on the facts here, as it does not address a situation in which officials collected and then retained fees from students after a pandemic. Plaintiffs' counsel further pointed to *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 67 Cal. Rptr. 3d 635 (2007), *as modified* (Nov. 15, 2007), *modified* (Nov. 28, 2007), where the court ordered the Regents to repay millions of dollars in student fees. However, as the Court also pointed out at oral argument, *Kashmiri* was decided in the breach of contract context. *Id.* at 827 (applying contract law to students' claim against Regents regarding increased fees). The case is therefore inapposite to a consideration of qualified immunity based on constitutional claims. Clearly established law did not demonstrate Napolitano's conduct in these cases, to the extent such conduct was alleged, to be unconstitutional. Napolitano is therefore entitled to qualified immunity as to Plaintiffs' individual capacity claims against her.

### D. The Doctrine of *Ex Parte Young* Does Not Apply.

*Ex Parte Young* creates an exception to the Eleventh Amendment bar on suits against a state in federal court where the state official is engaged in a continuing violation of federal law and the suit seeks prospective injunctive relief to stop that violation. *Papasan*, 478 U.S. at 277-78; *Ellett*, 254 F.3d at 1138. The doctrine of *Ex Parte Young* does not apply in suits where the remedy sought takes the form of money damages. *Papasan*, 478 U.S. at 278. "[T]he relief afforded in *Ex Parte Young* was prospective only;" a district court order taking a "retroactive position" and "requir[ing] the payment of a very substantial amount of money […] stands on quite a different footing." *Edelman*, 415 U.S. at 664. Where "[t]he funds to satisfy the award […] must inevitably come from the general revenues of the State […] the award resembles far more closely [a] monetary award against the State itself […] than it does the prospective injunctive relief

10

awarded in *Ex Parte Young*." *Id.* at 665. "A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief inevitably comes from the general revenues of the State, and thus resembles for a more closely a monetary award against the State itself, which is forbidden under the Eleventh Amendment. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (quoting *Edelman*, 415 U.S. at 665) (quotation marks omitted).

Here, Plaintiffs seek the creation of a common fund "consisting of all monies improperly received from the improper acquisition and retention of the mandatory student fees without notice and due process that must necessarily be refunded by Defendants to" the class members. (Dkt. 27 ¶ 118; *see also Ritter*, Dkt. 21 ¶ 174.) Plaintiffs also claim that they are seeking injunctive relief, by alleging that they "have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm unless the Court issues preliminary and permanent injunctive relief ordering Defendants to comply with the law, as set forth above, and to return to Plaintiff and the other class members that portion of the mandatory fees for which they received no benefit." (Dkt. 27 ¶ 116; *see also Ritter*, Dkt. 21 ¶ 172.)

Here, Plaintiffs are seeking retroactive relief in the form of money damages to be paid from state coffers. The Supreme Court recognizes the general rule that monetary relief is legal in nature; even when framed as "just compensation," the relief sought is "like ordinary money damages, a compensatory remedy." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710-11 (1999.) "[C]ompensation is a purpose traditionally associated with legal relief." *Id.* (citation and quotation marks omitted). At bottom, Plaintiffs are alleging that they made a bargain with the UC schools they attended to pay tuition and fees in exchange for services. When COVID intervened, students had paid tuition and fees but did not receive the services as promised. Plaintiffs now seek money in exchange for the fact that Defendants did not, in their view, hold up their end of the bargain. Despite Plaintiffs' attempt to frame their request for relief in injunctive terms, the substance of the relief they are seeking is monetary and the purpose of the relief is compensatory. However, *Ex Parte Young* does not authorize pursuit of such relief against States or their agents or instrumentalities in federal court.

11

United States District Court
Northern District of California

1 Plaintiffs further attempt to disguise their breach of contract claim as a constitutional takings claim, arguing that their tuition and fees remained their property after those funds were paid to UC. In support of this gambit, Plaintiffs cite two inapposite cases. In *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980), a Florida statute allowed a clerk of the state court holding interpleader funds to invest those funds and claim the interest as income of the clerk's office. The Court held that that creditors entitled to the interpleader fund "had a state-created property right to their respective portions of the fund." *Id.* at 161. In *Fowler v. Guerin*, 899 F.3d 1112, 1115 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 390 (2019), a class of teachers brought an action under 42 U.S.C. § 1983 for violation of the Takings Clause of the Fifth Amendment, alleging that the Director of the Washington Department of Retirement systems had improperly skimmed the interest from their state-managed retirement pension accounts. The Ninth Circuit held that the plaintiffs had stated a takings claim because the state was merely holding property that belonged to the plaintiffs on their behalf, and the interest also formed part of that property. *Id.* at 1118-19.

In each of these cases, the funds at issue remained the property of the plaintiffs and were merely held by the state actors, who were acting in a fiduciary capacity in managing the funds on the plaintiffs' behalf. Here, by contrast, the funds at issue were paid to UC pursuant to a contract, in exchange for services, with no expectation that the funds would be held for any specific purpose or redistributed on Plaintiffs' behalf. There is no fiduciary relationship created over the funds at issue. Indeed, the California Court of Appeals has expressly held that "[o]nce the University collects mandatory student fees, such funds become University property." *Erzinger v. The Regents of the University of California et al.*, 137 Cal. App. 3d 389, 393, 187 Cal. Rptr. 164 (Ct. App. 1982). After fees are paid, "[t]he Regents […] have exclusive authority to decide how to spend University funds." *Id.* As Plaintiffs themselves point out, they may have stated a claim for breach of contract in this case; unfortunately, the proper forum for such a suit is in state court. Plaintiffs' attempt to disguise their breach of contract claim as a takings violation under the Fifth Amendment is unavailing.

Plaintiffs' takings argument, extended to other contexts, leads to an absurd result, because

Plaintiffs identify no limiting principle to their theory. If every citizen who pays a state instrumentality for services – for example to get a driver's license from the Department of Motor Vehicles – could argue that their funds had been improperly seized under the Fifth Amendment whenever that citizen was dissatisfied with those services, the Eleventh Amendment would be effectively vitiated.

## CONCLUSION

For the reasons set forth above, the Court finds that the Eleventh Amendment bars Plaintiffs' suits in this forum. The Court GRANTS Defendants' motions to dismiss both actions in their entirety. Because leave to amend in this case would be futile, the Court does not grant leave to amend. The core of Plaintiffs' case is the failure to repay fees, and no amendment can solve the defects inherent in that core. The Clerk of Court is directed to close the files.

**IT IS SO ORDERED**.

Dated: November 10, 2020

_____
SALLIE KIM
United States Magistrate Judge

13